## ANDERSON v. OREGON SHORT LINE R. CO.

No. 2803.   Decided February 14, 1916.   (155 Pac. 446.)

1. RELEASE—CONCLUSIVENESS. Where the plaintiff, injured while in the employ of the defendant, released him "from all claims, demands, or causes of action for damages of every description or for personal injuries of every kind sustained in or growing out of said accident, or for complications arising from such injuries or treatment thereof," he was, in the absence of fraud or concealment, concluded and bound by the release. (Page 618.)

2. RELEASE—ACTIONS—QUESTION FOR JURY. Where the facts as to the making of a release were undisputed, its meaning and scope of release were questions of law for the court, and not of fact for the jury. (Page 619.)

3. RELEASE—AVOIDANCE—GROUNDS—SUFFICIENCY. Where the only ground alleged by plaintiff on which to base an avoidance of a release to his employer for injuries arising from the accident was that plaintiff was ignorant of the character and extent of his injuries and that defendant knew the extent of his injuries and refrained from informing him, and there was no evidence of any such knowledge or concealment by defendant, that was insufficient to avoid the effect of the release. (Page 619.)

4. RELEASE—CONSTRUCTION. A release, however general its language, covers nothing except the consequential results from the accident for which it was given, but does include all the consequences thereof. (Page 619.)

5. RELEASE—VALIDITY. A release by the injured employee of the employer from all liability arising from the accident is not a contract, regulation, or device, the purpose and intent of which is to enable the carrier to exempt itself from the liability created by the federal Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. 1913, Sections 8657-8665), and it is valid if fair and not a violation of public policy or statute. (Page 620.)

6. RELEASE—EVIDENCE—SUFFICIENCY. Evidence *held* to warrant the directing of a verdict for the defendant on his plea of complete release from the liability on which the plaintiff sued. (Page 621.)

Appeal from District Court, Second District; *Hon. N. J. Harris*, Judge.

Action by John C. Anderson against the Oregon Short Line Railroad Company.

Judgment for plaintiff. Defendant appeals.

REVERSED and REMANDED, with directions.

*P. L. Williams* and *Geo. H. Smith* for appellant.

*John G. Willis* for respondent.

FRICK, J.

The plaintiff brought this action to recover damages for personal injuries which he alleged he sustained through the negligence of the defendant. The defendant denied the alleged negligence and pleaded contributory negligence and assumption of risk. The defendant also set up a settlement and two releases as a bar to the action. The releases relied on were made a part of the answer. The plaintiff replied to the latter defense confessing the settlement and execution of the releases, but sought to avoid the legal effect thereof. The material allegations in the reply are as follows:

"Plaintiff says that, at the time of the execution and delivery of each of said releases, he was wholly ignorant of the character and extent of the result of said injuries, and that the defendant was fully acquainted with reference thereto; and refrained from informing plaintiff, in any wise, or at all, as to the character and extent of the injuries in said release mentioned and referred to. And that plaintiff was not aware of the necessity of amputating the said finger until about the 25th day of February, 1914."

The plaintiff further says that the injury was to the index finger of his left hand, and that he was treated in a certain hospital at the request of the defendant, and that it afterwards became necessary to amputate his finger. The reply then continues as follows:

"That during all of said times and especially at the time of the taking of said release, the defendant knew, or by the exercise of ordinary care it might have known, that said amputation was inevitable, but of which plaintiff was wholly ignor-

ant and depended solely upon the defendant for information pertaining thereto, the defendant, did not, in any wise, inform plaintiff that amputation of his finger was necessary, and it was because of said knowledge on the part of the defendant, and ignorance on the part of the plaintiff, that said release, and each thereof, were exacted from plaintiff by the defendant.''

The foregoing are the sole grounds upon which the releases were sought to be avoided, except that it was alleged that the twenty-five dollars paid to, and received, by the plaintiff, was a mere nominal and ''wholly inadequate'' consideration.

At the trial it developed that in assisting others to unload and transfer freight from defendant's depot platform at Ogden, Utah, the plaintiff had the index finger of his left hand injured; that on the day after the injury plaintiff signed a general release for the expressed consideration of one dollar; that thereafter he received treatment at the hands of a doctor employed by the defendant; that in a few days the finger improved, and the plaintiff went to work again for the defendant as before; that after working some days the finger seemed to get worse again, and plaintiff ceased working; that after quitting work plaintiff frequently went to see one Jed Abbott, who, it appears, was the claim agent for the defendant, to obtain an additional sum of money, that is, an amount in addition to what he had released the defendant for in the general release; that after making a number of visits to Mr. Abbott, as plaintiff says, he and Mr. Abbott agreed upon a further sum to be, and which was duly paid plaintiff, to wit, the sum of twenty-five dollars, for which he executed a further release which in part reads as follows:

''In consideration whereof, I release said Oregon Short Line Railroad Company    *    *    *    from all claims, demands, or causes of action for damages of every description, or for personal injuries of every kind and character, sustained in or growing out of said accident, or for complications arising from such injuries or treatment thereof.''

Plaintiff was injured on the 16th day of November, 1913. After that time he went to work as before stated, and on the 12th day of December following, he executed the second re-

lease, from which we have copied above. There is absolutely nothing in the evidence from which an inference could be deduced that the plaintiff was misled or deceived by any one, much less the defendant, respecting the extent of his injury. Indeed, the only claim that he makes is that the defendant did not say anything concerning the extent of his injury and did not inform him with respect to the necessity for amputating his finger, and that that matter was not in the contemplation of the parties when either settlement was made. Moreover, for aught that is made to appear, the plaintiff possessed as much information regarding the extent of his injury as did the defendant; and, further, there is absolutely nothing in the record that tends to show, or from which an inference can be deduced, that the defendant did anything whatever to prevent the plaintiff from obtaining full and complete information concerning the extent of the injury, if in fact he was not in possession of such information when he made the settlement.

Upon substantially the foregoing facts the defendant moved the court to direct the jury to return a verdict in its favor upon the ground that at least the second release constituted a complete bar to the action. The court refused to so charge the jury, but submitted the case to them upon the facts aforesaid and upon the law given them by the court. The jury returned a verdict in favor of the plaintiff, upon which the court entered judgment, from which the defendant appeals.

The defendant now insists that the court erred in refusing to direct the jury to return a verdict in its favor, for the reason that the undisputed facts show that the cause of action declared on was settled between the parties, and that the release aforesaid is a complete bar to the action. The theory upon which the court based its refusal to grant defendant's request is perhaps best reflected by giving the court's own language in its charge to the jury upon that question. The court, among other things, charged as follows:

"If therefore you should find from the evidence that at the time the said releases were executed and delivered by plaintiff it was not contemplated by either plaintiff or defendant that it might or would become necessary to amputate plain-

tiff's finger in question, because of the injuries thereto, received as aforesaid, then I instruct you that said releases would not, nor would either thereof, bar plaintiff from recovering in this action such damages as resulted to him, if any, from such amputation.''

The court, in thus charging the jury, refused to be bound by the express language of the releases which provided that, in consideration of the payment of the twenty-five dollars therein mentioned, the defendant was released ''from all actions, demands, or causes of action for damages of every description or for personal injuries of every kind and character sustained in, or growing out of, said accident, or for complications arising from such injuries or treatment thereof.'' It certainly is not easy to perceive how a party can settle or compromise a claim for injuries when its full extent or consequence may not be fully known if such was not done by the foregoing release. Moreover, if the law is as it is stated in the instruction, then, unless the parties fully and completely contemplated every possible consequence that may subsequently arise from an injury, and state the same explicitly in the release, a settlement, however fair, may be set aside merely because something may subsequently arise which was not fully foreseen by the parties. Fortunately such is not the law. If it were, settlements, instead of becoming the means of avoiding strife and unnecessary litigation, would become a most prolific source of both. The general rule respecting the legal effect of such releases is well stated by the Supreme Court of Texas in the case of *Houston, etc., Ry. Co.* v. *McCarty,* 94 Tex. 298, 60 S. W. 429, 53 L. R. A. 507, 86 Am. St. Rep. 854. The language of the Texas Supreme Court in that case is quoted and approved by this court in speaking through Mr. Justice McCarty in the case of *Viallet* v. *Railway Co.,* 30 Utah, where, at page 272, 84 Pac. at page 500, 5 L. R. A. (N. S.) 663, it is said:

'' 'That where a party, who has a claim against another for personal injuries, agrees upon a settlement of his claim, and accepts a sum of money or other thing of value in settlement of such claim, he is, in the absence of fraud or concealment, concluded in the settlement, is a proposition sustained, as we think, by one unbroken line of authority,' citing numerous cases.''

While it is true that the Viallet case was by this court re-versed, yet the reversal was entirely based upon the fact that the facts in that case made it an exception to the general rule. The general rule, as pointed out by us, and within which the case at bar clearly falls, is approved in that case. The legal propositions contained in the foregoing text are sustained by practically all the authorities. Among the numerous cases di-rectly in point, we refer to the following: *Nason* v. *Chicago, R. I. & P. Ry. Co.*, 140 Iowa 533, 118 N. W. 751; *Nelson* v. *Minneapolis, St. Ry. Co.*, 61 Minn. 167, 63 N. W. 486; *Chicago & N. W. Ry. Co.* v. *Wilcox*, 116 Fed. 913, 54 C. C. A. 147; *Meka* v. *Brown*, 84 Iowa 711, 45 N. W. 1041, 50 N. W. 46; *Hicks* v. *Harbison-Walker Co.*, 212 Pa. 437, 61 Atl. 958; *Quebe* v. *Gulf, C. & S. R. Ry. Co.*, (Tex. Civ. App.) 77 S. W. 442, affirmed by Texas Supreme Court in 98 Tex. 6, 81 S. W. 20, 66 L. R. A. 734, 4 Ann. Cas. 545; *McFarland* v. *Mo. Pac. Ry. Co.*, 125 Mo. 253, 28 S. W. 590; *Doty* v. *Chicago, St. P. & K. C. Ry.*, 49 Minn. 499, 52 N. W. 135; *Kansas City So. Ry. Co.* v. *Armstrong* (Ark.) 171 S. W. 123. See, also, *Eccles* v. *Union Pacific Ry. Co.*, 7 Utah 335, 26 Pac. 924.

No doubt, under the undisputed facts of this case, the mean-ing and scope of the release was a question of law for the court, and not one of fact for the jury. That question is fully considered in *Quebe* v. *Gulf, C. & S. F. Ry. Co.*, (Tex. Civ. App.) 77 S. W. 442, and is again considered by the Supreme Court of Texas in the same case in 98 Tex. 6, 81 S. W. 20, 66 L. R. A. 734, 4 Ann. Cas. 545. The trial court, **2, 3, 4** by the instructions, merely required the jury to do what was its manifest duty to do in view that the facts were not in dispute. Of course, a release, however general the language, does not cover anything except the consequential results flow-ing from the accident in question, but it does include all the consequences of that accident. If such were not the law, a single cause of action could be split up into a number of ac-tions. It is quite elementary that that may not be done. More-over, the grounds stated in the charge were manifestly insuffi-cient to avoid the effect of the release, and nothing else was proven. Indeed, the evidence submitted to the jury in the charge was all objected to by the defendant, and the objections

should have been sustained. The language of the release was clear and unambiguous, and no explanatory evidence was either required or permissible. Counsel for the plaintiff does not cite any authorities which hold to the contrary of those referred to above. Indeed, he does not assail the correctness of the legal proposition stated in those cases. He, however, seeks to avoid the effect of the release upon another ground.

In his brief, in referring to this question, he says:

"We present the question if, or not, the releases pleaded by the appellant in this case were not a 'contract,' 'regulation,' and 'device,' the 'purpose and intent of which' was to enable the common carrier to exempt itself from a liability created by this legislation?"

Counsel refers to the federal Employers' Liability Statute, wherein the foregoing language occurs. It will be remembered that in the act just referred to employees, except for certain purposes, are exempt from the defenses of contributory negligence and assumed risk. The act therefore provides that an employee may not be shorn of its benefits in that regard by any "contract, regulation or device." It would seem that such a result would be implied even though it were not expressed in the act. The mere fact that it is expressed, however, in no way affects its scope or effect. The purpose of the foregoing provision was not to prevent the employer and his employee from compromising and settling any matters of difference existing between them. In making such a settlement, if it is fair and free from fraud, concealment, etc., no rights of either of the parties are frittered away, but, on the contrary, are firmly maintained. The right to make a compromise and settlement and enter into a release is a right of contract which, in our judgment, cannot be interfered with even by Congress. Of course, Congress may deprive the employer of his common-law defenses, and to the end may prevent an indirect enforcement thereof; but it may not prevent the employee from adjusting his own affairs in his own way after a cause of action has arisen in his favor, so long as such adjustment is fair and violates neither public policy nor some proper and enforceable statutory provision.

We are clearly of the opinion that the court committed

manifest error in not directing the jury to return a verdict for the defendant upon the second release. In view that the first release is not controlling here, we express no opinion respecting its effect.

Defendant also presents the further question that the court erred in refusing to grant its motion for a non-suit upon the ground that no negligence was shown on its part, and that the plaintiff was guilty of contributory negligence and had assumed the risk as a matter of law. Plaintiff's counsel insists that the action is one arising under the federal statute, and hence the latter two defenses are not available.

As to the first contention, counsel also insists that it is covered by that statute. Counsel for plaintiff also insists that the decisions of the federal courts are in his favor upon those questions, while counsel for the defendant contend that they are in their favor. The question is not free from doubt, and, if it were not for the fact that the cause is completely disposed of by the settlement and release we have just passed on, we should give counsel the benefit of our views, although the questions raised are all federal questions, and their final determination is for the federal, and not for the state, courts. In view, however, that the cause is fully disposed of otherwise, and that we do not consider federal questions unless it is absolutely necessary to do so, we refrain from expressing any opinion upon the questions presented by the motion for nonsuit. In passing upon those questions now we might easily bring about complications which may be avoided by waiting until the Supreme Court of the United States, the final arbiter, has settled them.

For the reasons stated, the judgment is reversed, and the case is remanded to the District Court of Weber County, with directions to grant a new trial, and to proceed with the case in accordance with the views herein expressed. Appellant to recover costs.

STRAUP, C. J., and McCARTY, J., concur.