## MURPHY v. SALT LAKE CITY.

### No. 4177. Decided May 8, 1925. (236 P. 680.)

1. MUNICIPAL CORPORATIONS—CONTRACTOR, REQUIRED TO USE DESIGNATED ARTICLE OR APPROVED SUBSTITUTE, CANNOT SEEK REDRESS IN COURT WHEN NOT SUBMITTING DISPUTE TO ENGINEER. Under a contract for construction of municipal bath, providing that terra cotta should be product of B. or some other approved make, and that contractor should submit shop drawings for approval of architect, and that any differences were to be referred to city engineer, *held* that contractor could substitute different terra cotta for B.'s product, only after submitting it for approval by architect, and if architect arbitrarily refused substitute, he could not abide by order of architect without submitting differences to city engineer and nevertheless seek redress in court.[1]

2. CONTRACTS—COURT BOUND TO ENFORCE CONTRACT IN ACCORDANCE WITH INTENTION OF PARTIES, UNLESS WAIVED. Contracts are prepared and entered into for convenience and protection of parties, and, unless waived, courts are bound to enforce them in accordance with intention as same is manifested by the language used by the parties to contract.

3. CONTRACTS—OWNER MAY STIPULATE IN BUILDING CONTRACT FOR ARTICLE OF PARTICULAR MAKE. An owner, may in building contract, stipulate for an article of a particular make, in which case he is entitled to article stipulated for.

4. CONTRACTS—JUDGMENT OF PERSON NAMED TO APPROVE SUBSTITUTED ARTICLE CONCLUSIVE, IN ABSENCE OF BAD FAITH. An owner may, in building contract, stipulate for article of particular make, with provision for substitution on approval of owner or some other designated person, in which case owner is entitled to article stipulated for, unless he or the person named approves substitute, or refusal, to approve is made in bad faith, and mere error of judgment is not sufficient.

[1] *Ryan* v. *Curlew Irr., etc., Co.*, 36 Utah, 383, 104 P. 218.
See Headnote 1. 28 Cyc. p. 1049.
Headnote 2. 13 C. J. pp. 521, 525.
Headnote 3. 9 C. J. p. 738.
Headnote 4. 9 C. J. p. 739.
Headnote 5. 9 C. J. p. 763.
Headnote 6. 9 C. J. p. 756.

5. CONTRACTS—BUILDING CONTRACTOR PERMITTED TO USE SUBSTITUTED ARTICLE MAY SEEK REDRESS IN COURTS, IF SUBSTITUTED ARTICLE ARBITRARILY REJECTED. An owner may, in building contract, stipulate for article of particular make or one equal to it, in which case contractor has right to substitute another article which is equal in all respects to one named, and, if person selected to pass upon the fitness of the article arbitrarily rejects it, contractor may have recourse to the courts.

6. CONTRACTS—DECISION OF ARBITRATOR DESIGNATED IN BUILDING CONTRACT BINDING, UNLESS MADE ARBITRARILY OR IN BAD FAITH. If building contract provides that, in case differences arise between owner and contractor, they shall be submitted for adjustment to person agreed upon in contract, contractor must submit differences to designated person, whose decision is binding, unless he acted arbitrarily or in bad faith.

Appeal from District Court, Third District, Salt Lake County; *Ephraim Hanson*, Judge.

Action by J. P. Murphy against Salt Lake City. Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*Ray Van Cott* and *A. E. Moreton*, both of Salt Lake City, for appellant.

*Wm. H. Folland*, City Atty., and *Shirley P. Jones*, Asst. City Atty., both of Salt Lake City, for respondent.

FRICK, J.

Plaintiff, hereinafter called appellant, by this action sought to recover from Salt Lake City the sum of $3,510, with interest, which he alleged the city owed him upon a contract for the construction of a bathhouse for said city. The complaint is predicated upon the theory that appellant was wrongfully required to install terra cotta of a particular make in said bathhouse, when he could have obtained terra cotta which would have complied with the specifications and

the provisions of the contract; that the architect arbitrarily and capriciously refused to examine the terra cotta proposed to be installed by appellant, and arbitrarily required him to install terra cotta at a cost far in excess of the cost for which he could have installed the same, by reason of which he was damaged in the sum aforesaid.

The city, in its answer, denied the allegations of the complaint respecting the alleged acts of the architect, and averred that the appellant had at no time submitted to the architect any terra cotta for approval, that appellant had installed the terra cotta provided for in the specifications, and that he had been paid in full, and had discharged the city from all further claims on his part.

A reply was filed, but, inasmuch as no reply was required under our statute no further reference will be made thereto. The case was tried to a jury, which returned a verdict for the city, upon which judgment was duly entered. After appellant's motion for a new trial had been denied, he appealed.

The whole controversy arises concerning certain terra cotta scum gutters which were to be installed as a part of the bathhouse in question. The specifications respecting the terra cotta that was to be used, which were made a part of the contract, read as follows:

"Terra cotta white glazed shall be used for forming the copings and scum gutters of both the main and private pool, also for the ladders—one for the small and two for the large pool. The terra cotta shall be dense and heavy, with the joints worked out systematically; it shall be laid in cement concrete.

"The above terra cotta shall be the product of J. Francis Booraem or other approved make. Distance and depth markings shall be indicated in letters and figures burned in the glaze. Top surface of copings shall be rendered nonslipping. Joints shall be ground true, with the units set up and properly aligned in factory before shipment.

"Include with the scum gutter the necessary outlet thimbles of bronze, each complete with strainer, all properly connected to the lead pipe branch drains already installed by plumber.

"Submit shop drawings for approval of architect before placing the order."

The contract entered into between the city and appellant also contained the following provision:

"Any questions, differences, or controversies which may arise between the city and the contractor, relating to plans, specifications, measurement of quantities, or the technical sufficiency of the work, shall be referred to the city engineer, and his decision shall be final and conclusive upon the contractor and the surety on his or its bond."

The evidence of the city is to the effect that the appellant did not submit to the architect for his approval any drawings or any terra cotta for scum gutters as required by the specifications to which we have referred; that, after considerable controversy between the achitect and appellant, he, without referring the matter to the city engineer, agreed to and did install the terra cotta scum gutters named in the specifications which were duly approved and accepted by the architect; and that the bathhouse was afterwards completed and accepted, and the appellant received and receipted for the full contract price. Notwithstanding the fact that appellant did not comply with the provisions of the contract in submitting the differences between himself and the architect to the city engineer, the court submitted the case to the jury upon the theory that appellant could recover if the architect acted arbitrarily or capriciously, in requiring the appellant to install the particular terra cotta scum gutters mentioned in the specifications, or refused capriciously or arbitrarily to approve proper scum gutters. In view that the theory upon which the court submitted the case to the jury is clearly reflected in the instructions, and in further view that practically the whole discussion of appellant's counsel relates to those instructions, we here insert all of the instructions that were excepted to, indicating the portions to which counsel specifically excepted in italics.

"The words 'other approved make' are to be given their usual and ordinary meaning. Webster defines 'approved' as: 'To show to be real or true; to prove; to demonstrate; to make or to show to be worthy of approbation or acceptance.' It has such meaning in the specifications in question, signifying that the contractor shall, if he desires to install any terra cotta other than the Booraem make, show it to be worthy of approval. *'Approved make' means*

*any make satisfactory to the person or officer, acting fairly and impartially, who has the power to approve it.* In this case the proof or showing is to be made to the architect in charge of the work, and in making the proof or showing the contractor has a right to demand that the architect, in his consideration of the question, act fairly and impartially and exercise an independent and honest judgment in the matter submitted to him. An architect cannot act in an arbitrary and capricious manner, but must exercise an independent and honest judgment in arriving at his decision in giving his approval or refusal to approve any particular type or manufacture of scum gutter.

"(7) If you find by a preponderance of the evidence that the plaintiff did in fact produce a make of terra cotta which was in fact equal to the product of J. Francis Booraem, and which complied fully in every other particular with the specifications, then he had a right to have the architect approve it; and, if you further find by a preponderance of the evidence, that the architect arbitrarily refused to approve it and arbitrarily insisted either by word or conduct, upon the plaintiff installing the J. Francis Booraem product, then I charge you that the plaintiff had a right to install the Booraem product at the price thereof to him, and to claim as damages by reason thereof the difference between the cost of the J. Francis Booraem product and the cost of the terra cotta he had proposed to install, and in that case your verdict should be for the plaintiff for such amount, but not exceeding the sum of $3,510, the amount he prays for, together with interest at 8 per cent per annum from January 9, 1923.

"(8) You are instructed that, if you find as a matter of fact that the architect of the city acted in a fair and impartial manner, and exercised an honest and independent judgment upon the question of giving or withholding approval to the various types of scum gutters offered by the plaintiff, if any, for his approval *then you cannot review his judgment or decision, even though you may believe that some other type of scum gutter might have answered the purpose.*

"(9) You are instructed that the defendant city had the right to specify patented scum gutter for installation at the municipal baths, if all bidders were upon an equality and could have obtained such patented article on equal terms, and there is no evidence in this case from which you could find that all bidders were not on an equality.

"(10) *Before you can find for the plaintiff in this action, you must, in addition to the other elements set forth in these instructions, find from the preponderance of the evidence that the architect of defendant failed and refused to give approval to some other make of scum gutter than the Booraem make, and that such other*

*make was in fact, under the circumstances, the equal and equiva
lent of the Booraem make, and that in such refusal to give approval
the architect acted in an arbitrary and capricious manner and
did not exercise an honest and independent judgment.* And, if you
do not so find from the preponderance of the evidence, it is then
your duty to find a verdict in favor of the defendant for no
cause of action."

The exception to instruction No. 7 is in the following
words:

"Plaintiff excepts to instruction No. 7, for the reason that it is
not a correct statement of the law, and particularly to that portion
thereof which requires the plaintiff to purchase and make a terra
cotta which was in fact equal to the product of J. Francis Booraem,
and which complied fully in every particular with the specifica-
tions."

Appellant excepted to instruction No. 9 as a whole. It is
insisted that he was not required to install a particular type
or make of terra cotta scum gutter, but all that he was re-
quired to do was to install a scum gutter of an approved
type or make; that is, a scum gutter which was being used
by other builders, or which was approved by others. This
contention, it seems to us, is in the very teeth of the specifica-
tions with which appellant had agreed to comply. The spec-
ifications provide that the terra cotta which shall be used
in the scum gutters "shall be the product of J. Francis
Booraem or some other approved make." If that were all
that was contained in the specifications, there might, per-
haps, be at least some reason for appellant's contention.
The specifications also provide that, before any order for
terra cotta is placed, shop drawings must be submitted to
the architect for approval. If, therefore, the appellant de-
sired to substitute terra cotta for the J. Francis Booraem
product, he could do so only after submitting his shop draw-
ings for the approval by the architect of the terra cotta
which he proposed to substitute for the Booraem product. If
appellant's contention is sound, then the provision in the
specifications to which we have just referred is wholly with-
out meaning or effect. Moreover, if the architect arbitrarily
or capriciously refused to approve the terra cotta submitted
to him for approval, appellant had a clear remedy under

the contract. All he was required to do was to submit the matter to the city engineer, and, if the city engineer arbitrarily or capriciously, or without adequate cause, refused to permit appellant to install proper terra cotta, he then could have installed the J. Francis Booraem product, and could have had recourse to the courts for the recovery of any damage he may have sustained by the wrongful act of the city engineer. Appellant could, however, not abide by the orders of the architect without submitting the differences between him and the architect to the city engineer and nevertheless seek redress in the courts unless the city had waived the provisions of the contract, as pointed out by this court in *Ryan* v. *Curlew Irr., etc., Co.,* 36 Utah, 383, 104 P. 218.

Provisions like those in the contract referred to are found in almost all building and construction contracts, and have frequently been considered and enforced by the courts. Such provisions are held binding upon both parties to the contract, unless mutually waived. *Martinsburg & Potomac Ry.* v. *March,* 114 U. S. 549, 5 S. Ct. 1035, 29 L. Ed. 255; *Moore* v. *Kerr,* 65 Cal. 519, 4 P. 542; *Wright* v. *Meyer* (Tex. Civ. App.) 25 S. W. 1122; *Ryan* v. *Curlew Irr., etc., Co.,* supra. See, also, 9 C. J. p. 703, § 23, where the rule is stated and the cases from the various jurisdictions are collated.

The district court therefore treated appellant more liberally than he was entitled to be treated under the law. Moreover, the court instructed the jury that, if the architect acted arbitrarily or capriciously, and unless he acted independently in the matter of refusing to approve terra cotta other than the J. Francis Booraem product, the city would be liable. That instruction was evidently based upon the authority of *Camp* v. *Neufelder,* 49 Wash. 426, 95 P. 640, 22 L. R. A. 376, where it was in effect so held by a divided court. The specifications and the provisions of the contract in the Washington case were, however, not parallel with those in the case at bar. In the Washington case the contractor was required to install an article of a particular make or its equal. He was not required to submit the article he

intended to substitute for the one named in the specifications for the approval of the architect before purchasing the same as in the instant case. All that he was required to do was to install an article which was as good and as fit; in other words, was the equal of the one named in the specifications. When he had done that, he had complied with his contract. Not so in this case. Here the appellant was required to install the J. Francis Booraem product or one approved by the architect. True, he had the right to submit another product for the approval of the architect. If he had done so, and the architect had arbitrarily or capriciously refused to approve the product proposed to be installed by appellant, then he could have appealed to the city engineer to settle the question. That he could submit to the engineer any differences arising between him and the architect was expressly provided in the contract. Contracts are prepared and entered into for the convenience and protection of the parties, and unless waived the courts are bound to enforce them in accordance with the intention as the same is manifested by the language used by the parties to the contract. The appellant, in preparing his bid for the construction of the bathhouse, the same as all other bidders, was fully and definitely informed of the kind and character of terra cotta that the city desired to have installed. The bidders were all informed that the city desired the J. Francis Booraem product, or, in case another should be substituted, it should be first approved by the architect, and that no order should be placed for any other product without first submitting the product proposed to the architect for approval. The bidders were therefore not concerned in the cost of the terra cotta unless they desired to submit a bid for the higher priced article and substitute a cheaper one therefor. In preparing their bids, they were required to keep in mind the cost of a particular make of terra cotta, namely, the J. Francis Booraem product, and they could not substitute another unless approved. If that is not the meaning of the specifications, then no particular

meaning can be given them, but they can be made to mean most anything.

It certainly is the law: (1) That the owner in calling for bids for the construction of a building may, in his call and in the building contract entered into between him and the contractor, stipulate for an article of a particular make. (2) That he may also stipulate that an article of a particular make shall be furnished by the contractor, provided that the latter, upon the approval of the owner or of some other designated person, may substitute an article of a similar kind for the particular one named. (3) That he may further stipulate that an article of a particular make shall be furnished, or that the contractor may furnish one equal to it or one that is just as good as the one described. (4) That, if the contract provides that in case any differences arise between the owner and the contractor such differences shall be submitted for adjustment to a person agreed upon in the contract, then it is the duty of the contractor to submit the differences to the designated person for decision, and the decision is binding upon both parties, unless the designated person has acted arbitrarily or capriciously or in bad faith in arriving at a decision. (5) That under proposition 1 the owner is entitled to the article stipulated for. (6) That under proposition 2 the owner is entitled to the article stipulated for unless he or the person named approves a substitute, and in approving or refusing to approve a substitute, the judgment of the owner or person named must prevail unless he acts in bad faith. A mere error of judgment in that regard is not sufficient to entitle the contractor to relief at the hands of a court of justice. (7) Under the proposition No. 3, the contractor has a right to substitute another article which is the equal in all respects to the one named, and, if the owner or the person upon whom the owner has conferred the right to pass upon the fitness of the article arbitrarily or capriciously rejects it, and such rejection causes damage to the contractor, he may have recourse to the courts.

In such case the contractor is entitled to the impartial and independent judgment of a judge or jury.

This case comes squarely within proposition 2, and the court, in its instructions, certainly stated the law as favorable to appellant as contractor as he was entitled to have it stated.

What has been said also disposes of the assignments in which it is alleged that the court erred in refusing certain requests to instruct made by appellant. Nor are the other assignments tenable. Indeed, appellant's counsel do not seriously contend that the judgment should be reversed upon those assignments.

The judgment is therefore affirmed with costs.

GIDEON, C. J., THURMAN and CHERRY, JJ., and WOOLLEY, District Judge, concur.

NOTE.—The cause was orally argued and submitted on October 24, 1924, to court consisting of WEBER, C. J., GIDEON, CHERRY, and FRICK, JJ., and DILWORTH WOOLLEY, District Judge. Later it was submitted on briefs to THURMAN, J. The term of office of Chief Justice WEBER expired before the disposition of the cause.