460 P.2d 323

Darrell H. REYNOLDS, Plaintiff and Appellant,

v.

Charles S. MERRILL, Defendant and Respondent.

No. 11482.

Supreme Court of Utah.

Oct. 22, 1969.

Wilford A. Beesley, Orval C. Harrison, Salt Lake City, for appellant.

L. E. Midgley, Salt Lake City, for respondent.

ELLETT, Justice:

This is an action to recover for personal injuries and property damages arising out of a collision between cars driven by the parties hereto. The accident occurred on Friday, June 3, 1966, when the defendant's automobile ran into the rear of the plaintiff's Volkswagen. Immediately after getting home, the plaintiff called his physician, who prescribed conservative treatment, and made an appointment for the following Tuesday. For some two and a half months thereafter the doctor treated the plaintiff for what was diagnosed as a recurrence of bursitis. On August 22, 1966, at the request of the defendant's insurance adjuster the doctor signed an Attending Physician's Report containing the following information:

(1A) Diagnosis and concurrent conditions—
   [Answer] (1) Traumatic bursitis of rt. shoulder.
   (2) Traumatic myositis posterior neck muscles.

(1B) Were X-rays taken? [Answer] Yes.
   If yes, where? [Answer] Cottonwood Hospital.

\* \* \*

(7A) How long was or will patient be constantly disabled (Unable to work)?

[Answer] Not disabled.

On September 26, 1966, the insurance adjuster paid plaintiff $655.56 and took from him a release which among other things recited:

> The undersigned hereby declare(s) and represent(s) that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite and in making this Release it is understood and agreed, that the undersigned rely(ies) wholly upon the undersigned's judgment, belief and knowledge of the nature, extent, effect and duration of said injuries and liability therefor and is made without reliance upon any statement or representation of the party or parties hereby released or their representatives or by any physician or surgeon by them employed.

Plaintiff's shoulder pains grew more severe, and on December 1, 1966, he was hospitalized by his doctor for three days in order that tests might be taken; and upon the expiration of those tests the doctor stated in his Progress Notes that the diagnosis was not definitely determined. The plaintiff was then referred to an orthopedic specialist who diagnosed plaintiff's injury as a herniated disc. A spinal fusion was performed on December 19, 1966, resulting in a permanent partial disability.

The trial court believed that the plaintiff had lost all rights against the defendant by reason of the release given, and he entered a summary judgment dismissing the complaint. In doing so, he failed to distinguish between an *unknown injury* and *unknown* consequences of a *known injury*. The former can be the basis of a mutual mistake of fact, while the latter would be only a mistake of opinion. While an injury may be known, its consequences are not matters of existing facts which can be agreed upon or even foreseen exactly. Such consequences will be revealed only in the future and at the present time are merely matters of opinion.

The great majority of cases since the turn of the century have recognized this distinction.[1] Utah follows the modern

---

1. Some cases go further and grant relief from a settlement when the consequences of a known injury greatly exceed the anticipated results at the time of making the settlement. See Corbin on Contracts, Sec. 1292; see also the annotation in 71 A.L.R.2d at page 105, Sec. 5(b); see also Reede v. Treat, 62 Ill.App.2d 120, 210 N.E.2d 833 (1965). The dissenting opinion filed herein would have us follow the minority view as expressed in the case of Wheeler v. White Rock Bottling Company, 229 Or. 360, 366 P.2d 527 (1961). In reversing the trial court the Supreme Court at page 529 said: "The trial court followed the numerical weight of authority in other jurisdictions, \* \* \*"

trend as is illustrated by the two following cases:

Anderson v. Oregon Short Line R. Co., 47 Utah 614, 155 P. 446 (1916), was a case where plaintiff sought to be released from a settlement made with the defendant and failed in his effort. There he had a known injury and settled his claim therefor. At that time he knew what the injury was but did not know that he would subsequently lose a finger as a result of the injury. The court properly refused to set aside the settlement.

The case of Kirchgestner v. Denver & Rio Grande W. R. Co., 118 Utah 20, 218 P.2d 685 (1950), is in point, although it was reversed on rehearing because of an instruction relating to the degree of proof required to set aside the release. At pages 28 and 29 of the Utah Reports, at page 690 of 218 P.2d this court said:

The defendant argues that even if the parties were mutually mistaken with respect to the nature and extent of the plaintiff's injuries, such mistake is immaterial because the plaintiff by the release discharged all claims and causes of action which he then had or might thereafter have or claim on account of any and all personal injuries whether then known or unknown, apparent or unapparent, including complications arising from personal injuries, and that the very basis of the release was that the parties might be wholly mistaken as

to the nature and extent of the injuries suffered by the plaintiff. However logical the defendant's argument may seem, the authorities are to the contrary. Because a release is as all-inclusive in its terms as legal ingenuity can make it and purports to release all possible claims arising out of an accident and is understood as such by the releasor, it will nevertheless be set aside when it can be shown that at the time of its execution both parties were laboring under a mutual mistake as to the extent of the injuries suffered by the releasor. [Citations omitted.]

Appellant contends that the Kirchgestner case is governed by federal law. We agree as to the liability and defenses involved that the case was governed by federal law, but we cannot see why the state law and the federal law should not be the same so far as contractual rights are concerned. In fact, our own court has spoken on this point. In the case of Anderson v. Oregon Short Line R. Co., supra, at page 620 of the Utah Reports, at page 448 of 155 P. this court said:

Counsel refers to the federal Employers' Liability Statute, wherein the foregoing language occurs. It will be remembered that in the act just referred to employés, except for certain purposes, are exempt from the defenses of contributory negligence and assumed risk. The act therefore provides that an

employé may not be shorn of its benefits in that regard by any "contract, regulation or device." It would seem that such a result would be implied even though it were not expressed in the act. The mere fact that it is expressed, however, in no way affects its scope or effect. The purpose of the foregoing provision was not to prevent the employer and his employé from compromising and settling any matters of difference existing between them. In making such a settlement, if it is fair and free from fraud, concealment, etc., no rights of either of the parties are frittered away, but, on the contrary, are firmly maintained. The right to make a compromise and settlement and enter into a release is a right of contract which, in our judgment, cannot be interfered with even by Congress.

The respondent relies on the Arizona case of Hoopes v. Lamb, 102 Ariz. 335, 429 P.2d 447. The statement in the preamble to the headnotes shows that Arizona respects the distinction between unknown results of a known injury on the one hand and unknown injuries on the other:

* * * The Supreme Court, Lockwood, J., held that pedestrian who released motorist, in consideration of $7500, from all known and unknown injuries resulting from the accident could not have the release rescinded when he subsequently developed pseudarthrosis

with respect to the mending of his broken legs, since condition of pseudarthrosis was not "unknown injury," but was merely consequence of known leg injuries.

The Hoopes case, supra, quotes from the case of Dansby v. Buck, 92 Ariz. 1, 373 P.2d 1 (Ariz.1962), and that case on page 4 states the law of Arizona to be as follows:

It is uniformly held that a general release of a claim for personal injuries may, under proper circumstances, be avoided on the ground of mutual mistake as to the nature or seriousness of the injury. Robert Hind, Ltd., v. Silva, 75 F.2d 74 (9th Cir. 1935); annot. 48 A.L.R. 1462, and authorities cited thereunder. See, in particular, pp. 1467–1471. We believe sound logic, as well as the greater weight of authority, supports the rule laid down by those authorities.

The case of Ranta v. Rake, 91 Idaho 376, 421 P.2d 747 (1967), is squarely in point with the instant matter. At page 751 the court said:

The majority and the more modern view, while recognizing the policy of encouraging out-of-court settlements of personal injury claims, permits a releasor to avoid a release where unknown injuries existed at the time the release was executed though the release invariably is broad enough to encompass unforeseen injuries and though the re-

lease was honestly obtained without fraud, over-reaching or undue influence on the part of the releasee. Some courts have recognized that cases of this type are to some degree sui generis and substantially abandon any attempt to fit these situations within the classic limitations of the law of fraud or mistake and have held that the release may be set aside upon a showing of an inequitable result unless it is established that it was "fairly and knowingly made." [Citations omitted.]

In the instant case the plaintiff does not contend that he should have the release set aside if it is shown that he actually intended to settle for all injuries. He here is asking for a day in court to establish, if he can, that there was a mutual mistake of fact regarding the injury which actually was in existence but which was unknown to both him and the insurance adjuster.

We are not here concerned with the question of when the plaintiff's disc was herniated. He has alleged that it resulted from the accident. If he can prove it, and that at the time of signing the release neither party knew about it, he should have that privilege.

The summary judgment granted by the lower court is reversed, and the case is remanded to the lower court for a trial on the issues presented by the pleadings. The appellant is awarded costs.

CROCKETT, C. J., and TUCKETT, J., concur.

CALLISTER, Justice (dissenting).

Plaintiff was injured in an automobile accident on June 3, 1966. He sustained injuries to his neck and upper back for which he sought medical treatment. His physician in a report dated August 22, 1966, stated that plaintiff was still under care for his condition and that the estimated date of termination and cost of further treatment was undetermined. Nevertheless, on September 26, 1966, plaintiff executed a release for $655.56 for " * * * all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident. * * *" In response to certain interrogatories plaintiff stated that the repair bill for his automobile was $76.50 and his original physician's bill was $98. (There is no indication what proportion of the doctor bill was for services rendered prior to the execution of the release.) It thus appears that plaintiff determined to take a calculated risk that the ultimate cost for the treatment of his injuries would not exceed the sum for which he settled. Subsequent events indicate his miscalculation.

Plaintiff's original physician in his report diagnosed plaintiff's injuries as 1) traumatic bursitis of the right shoulder, and 2) traumatic myositis of the posterior neck muscles. Subsequent to the date of the release, plaintiff's condition deteriorated, and he consulted other doctors. In mid-December of 1966, an orthopedic surgeon diagnosed plaintiff's injury as a herniated disc for which a spinal fusion was performed.

Plaintiff contends that the release he executed is void on the ground that the parties acted under a mutual mistake of fact. He reasons that the insurance adjuster had in his possession the physician's report and that the parties mistakenly believed that he had minor inconsequential injuries, i. e., inflamed neck and shoulder muscles and that the settlement was concluded on this basis.

The essential conflict between the majority opinion and this dissent is primarily a matter of semantics. The majority considers the term "injury" as synonymous with a correct diagnosis of the specific anatomical feature claimed injured. The majority assumes that plaintiff's "injury" was "unknown," since plaintiff did not know that he had a herniated disc. This dissent is premised on the consideration that plaintiff knew he had sustained injuries to his neck and upper back for which he had a disputed, unliquidated claim, that he relinquished for a sum certain in a compromise agreement, characterized as a release.

The release agreement specifies that the releasor declares and represents "that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite" and that the releasor in making the agreement understands and agrees with the releasee that the releasor relies wholly upon his own *"judgment, belief* and *knowledge* of the *nature, extent, effect* and *duration"* of his injuries and the release is made without reliance upon any statement or representation of the releasee, representatives of the releasee, or by any physician or surgeon employed by the releasee. (Emphasis added.)

In the light of the language of the release as well as the facts surrounding its execution, it is difficult to entertain plaintiff's theory that there was a mutual mistake of fact and that the parties intended the release to cover only superficial injuries. The release was executed more than three months after the accident, the releasor was still under his physician's care, and the sum he received was for a greater amount than the expenses he had incurred. This suit, in fact, is premised on plaintiff's error in calculating his projected expenses.

The case of Wheeler v. White Rock Bottling Company of Oregon[1] is factually similar to the instant action. Plaintiff's injury, incurred in a motor vehicle collision, was diagnosed by her family physician as back strain. She released defendant from all claims known and unknown resulting from the accident, three months thereafter. The trial court decreed rescission on the ground that plaintiff intended releasing only her claim for sacroiliac and lumbar strain (she had subsequently discovered that she had a herniated disc), and that at the time of execution of the release all parties concerned were mistaken as to the nature and extent of the plaintiff's injuries.

On appeal, the court observed that the question was whether an honest release, untainted by unconscionable conduct, can be set aside because it was improvident. The court cited authority and commented that some cases seem to base relief upon real or supposed mutual mistake. In a footnote thereto, it was stated:

True mutuality should permit the insurer to follow up its overpayments and rescind releases in cases where the injuries are less serious than first supposed.

The court continued:

We turn, then to the plaintiff's major contention, that she should be allowed to rescind the release because of mutual mistake. Since she now has incurred substantial medical expenses, far beyond her contemplation when she signed the release, she understandably says she was mistaken. She also urges that the insurance adjuster was mistaken or he would have paid more than $500 for the release. There is little reason to doubt the truth of this assertion.

We assume, therefore, that the plaintiff would have asked and the insurer would have paid more for the release if the parties had known that the plaintiff was suffering from a ruptured disc instead of from supposedly less serious back injuries. The courts which have granted relief from premature releases in such cases have talked in terms of mutual mistake. The decisions recognize that ordinarily mistaken opinions, or bad guesses about future possibilities, do not constitute the kind of mutual mistake that will make a contract voidable at the option of either party. However, the courts following the policy of treating improvident releases as voidable apparently are guided by these factors: (a) the peculiar dignity the law accords the human person, as distinguished from articles of commerce; (b) the very real possibility of being mistaken about the long-range effects of damage to human tissue; and (c) the inequality of the

1. 229 Or. 360, 366 P.2d 527, 529–530 (1961).

bargaining positions of the contracting parties.

Such cases simply hold that it is not fair to an injured tort victim to hold him to a bargain if it turns out later that the bargain was grossly unwise. The reasons mentioned above, while undeniably sound reasons for scrutinizing releases carefully for fraud or over-reaching, may prove too much when applied to bargains made advisedly and with the express purpose of shifting the burden of risk in exchange for prompt payment of cash.

When courts recite, for example, as a matter of more or less common knowledge, that terminal tumors sometimes begin with minor contusions, or otherwise concern themselves with details of tragedy that may stalk those who sign early releases, they are not announcing truths known only to lawyers. These matters are also commonly known by laymen.

The release in this case was signed with a complete understanding, insofar as the document itself and other evidence shows, that for $500 cash in hand the plaintiff was willing to assume whatever risks might lurk in the settlement of her personal injury claim. If the release in this case can be avoided, then no release in Oregon will be final until the statutes of limitations have run their course.

Heretofore this court has considered the settlement of claims prior to litigation to be in the public interest. In the redress of wrongs between motorists, we follow adversary procedure in court when settlement is not otherwise made. There is no reason in principle why an improvident settlement made before trial is any more to be set aside than a judgment rendered upon a verdict that hindsight later proves to have been obtained too soon and for too little. No one has suggested that judgments in personal injury cases should be kept open like claims under the Workmen's Compensation Act for additional awards in the event of aggravation (ORS 656.276).

As noted, there are attractive policy reasons for adopting a rule that would permit perfectly honorable releases to be repudiated in the event of aggravation of an injury or the discovery of undiagnosed injuries. There are less compassionate but equally sound policy reasons for requiring persons of legal age and capacity to contract to stand by their covenants, including bargains containing an element of chance. * * *

Accordingly, while we are mindful of the trend elsewhere toward treating releases as binding only when they do not result in hardship, we believe that our own decisions and previous choices of competing policy considerations require us to reject mere improvidence as a

plausible ground for setting aside otherwise unimpeachable contracts.[2]

In Casey v. Proctor [3] the court observed:

   \* \* \* the majority of jurisdictions permit a releas[er] under proper circumstances to avoid a release, regardless of its terms, where it appears that unknown injuries existed at the time it was executed. [Citations omitted.] Although most of the decisions are couched in terms of "mutual mistake," this rationale does not satisfactorily explain the case holdings. Invariably, the release has been drafted by the releasee in terms sufficiently broad to include a discharge of liability for unknown injuries. While the releasee is ignorant of the existence of injuries, he is also indifferent to their existence. He seeks a discharge of liability in any event, and it cannot be said that he would not have entered into the release had he actually known of them.

   There are competing policies involved. On the one hand, the policy of the law is to encourage out-of-court settlements. To further this policy the parties to a dispute should be encouraged to negotiate settlements and to enter into releases. In the absence of unfair conduct on the part of the releasee, the law should extend its protection to the stability of the transaction by holding the parties to the express terms of the release. If later discovered injuries may be asserted, no release would be final and free from attack until the statute of limitations has run. [Citations omitted.] On the other hand, if the releas[er] is bound by the literal terms of the release, it has been recognized that he is left to suffer personal injuries without compensation, while the releasee, who usually is an insurer, has received a windfall in avoiding liability for a risk it has been paid to assume. [Citations omitted.] Furthermore, the long-term effects of damage to human tissue are extremely difficult to anticipate and the opportunity for error is great. [Citations omitted.] Finally, stress has been laid upon the fact that as between the releas[er] and the releasee, a large disparity of bargaining power is present; usually the release is a prepared form drafted by experts and presented in a take it or leave it manner, while the releas[er] is ordinarily an individual without any knowledge of legal documents or assistance from legal counsel. [Citations omitted.] The fact that these considerations warrant special treatment of re-

---

Also see Smith v. Loos, 78 N.M. 339, 431 P.2d 72 (1967) ; Beaver v. Harris Estate, 67 Wash.2d 621, 409 P.2d 143 (1965) ; Pepper v. Evanson, 70 Wash. 2d 309, 422 P.2d 817 (1967).

3. 59 Cal.2d 97, 28 Cal.Rptr. 307, 315, 378 P.2d 579, 587 (1963).

lease for personal injuries has long been recognized. [Citations omitted.]

The courts have indulged in various legal fictions, such as, characterizing unilateral mistakes or mistakes in prophecy or opinion as bilateral mistakes, in order to grant relief. Rather than juggling contract concepts, it would be preferable to hold on the ground of public policy that all releases for personal injury are voidable. This is an appropriate area for legislative action, and the States of Maine, North Dakota, and Idaho have responded with legislation thereto.[4] However, the efficacy of releases would be undermined, since the purpose is to resolve a disputed, unliquidated claim by compromise. Until the legislature deems action appropriate to alter the effect of releases, the traditional rule appears preferable. The Utah rule as stated in Anderson v. Oregon Short Line R. Co.[5] is as follows:

> " ' * * * where a party, who has a claim against another for personal injuries, agrees upon a settlement of his claim, and accepts a sum of money or other thing of value in settlement of such claim, he is, in the absence of fraud, or concealment, concluded in the settlement, * * *.' "

\* \* \* \* \* \*

* * * Of course, a release, however general the language, does not cover anything except the consequential results flowing from the accident in question, but it does include all the consequences of that accident. If such were not the law, a single cause of action could be split up into a number of actions. It is quite elementary that that may not be done. * * *

I cannot agree with the majority opinion that Kirchgestner v. Denver & Rio Grande W. R. Co.[6] is the law of Utah, since the entire opinion was carefully qualified by the following statement:

> * * * Since the legal effect of a release from liability arising under the Federal Employers' Liability Act is governed by federal law, we must determine the merit of the defendant's contention according to that law. * * *

The court then proceeded to cite and discuss federal cases involving mistake and observed:

> * * * Under the authority of the cases discussed above, the issue of whether there was a mutual mistake of fact was properly submitted to the jury. * *

There is a temptation to be swept with the tide of numerical judicial authority, but logic impels this dissent. I fully con-

---

4. See footnote 5 of Casey v. Proctor, note 3 supra, at p. 588 of 378 P.2d.
5. 47 Utah 614, 618–619, 155 P. 446 (1916).
6. 118 Utah 20, 24, 28, 218 P.2d 685, 690 (1950).

cur with the reasoning of the Oregon court in Wheeler v. White Rock Bottling Company of Oregon.[7] There is no valid legal ground to rescind a release, untainted by unconscionable conduct, because subsequent events indicate that it was improvident for the releasor to bargain away his claim and assume the burden of risk in exchange for the prompt payment of cash. The judgment of the trial court should be affirmed.

HENRIOD, Justice (dissenting).

I dissent.

The main opinion's thrust is that the trial court "failed to distinguish between an *unknown* injury and unknown consequences of a *known injury.*"

I think the trial court did not have to make any such distinction under the plain language of the release. I think the author of the main opinion, not the trial court, erroneously has made a distinction in the terms of the release which no syllogistic reasoning possibly can justify. It has prevented the parties to the release from indulging their legal privilege to contract as they choose.[1]

What does the release say? It releases Merrill from any claims growing out of any or all

> "known *and unknown,* foreseen *and unforeseen* * * * injuries * * * *and the consequences* thereof. * * *"

This language is in the *conjunctive* and clearly releases claims for injuries *and the consequences of either known or unknown* injuries,—without distinction or reservation whatsoever. But the main opinion volunteers such distinction,—made neither by the parties nor the contract. The main opinion makes absolutely no reference whatever to the clear language adverted to above,—*the very meat of the contract,* and nowhere in the opinion is any attempt made to point out where and in what respect such language or any other language in the contract supports the thesis and gratuity of the main opinion.

In view of the sharp disagreement in this dissent and that of the main opinion with respect to interpretation of the terms of the release, something should be said about the authorities cited by Mr. Justice Ellett which he claims support his conclusion.

---

7. Note 1, supra.

1. This court said in Ephraim Theatre Co. v. Hawk, 7 Utah 2d 163, 321 P.2d 221 (1958), as we have said and reiterated dozens of times, that:

   "Generally speaking, neither of the parties, nor the court, has any right to ignore or modify conditions which are clearly expressed merely because it may subject one of the parties to hardship, but they must be enforced 'in accordance with the intention as * * manifested by the language used by the parties to the contract. Murphy v. Salt Lake City, 65 Utah 295, 236 P. 680, 683 (1925).'" See also Restatement Restitution, § 11(1).

He says "The great majority of cases since the turn of the century have recognized this distinction." *Not so*. The very first case he cites is one of our own Utah cases, Anderson v. O. S. L. Ry.[2] I challenge the author of the main opinion to point out any language in that case that recognizes any such distinction. On the contrary, the law of that case is found in the following language:

. Of course, a release, however general the language, does not cover anything except the consequential results flowing from the accident in question, *but it does include all the consequences of that accident*. If such were not the law, a single cause of action could be split up into a number of actions. It is quite elementary that that may not be done. [Emphasis added.]

The Anderson case, decided in 1916, presently is the Utah law on releases. It was a unanimous decision, and for over half a century has not been overruled, modified, or even criticized. It is no authority, in any sense of the word, that supports the proposition erroneously espoused by the main opinion. In truth, as late as 1961 the Utah Law Review, Spring 1961, Vol. 7, No. 3, "Mistake in the Utah Law of Contracts," p. 315, cites the Ander-

son case as being the law in Utah, saying that "a party executing a release from liability on account of personal injury suffered was not permitted to rescind such release because of mistake as to the extent of the injury." No distinction was suggested in the article between *"unknown injury"* and *"unknown* consequences of a known injury."

The Anderson case is a case in point that should be controlling here in affirming the trial court.

The second case cited by the main opinion is Kirchgestner v. D. & R. G. W. R. Co.[3] That case is strictly a Federal Employers' Liability Act case,[4] and this dissent concedes that it is governed by federal statutory and case law. It is not, however, applicable to *this* case or *any other state case since* Anderson v. O. S. L. Ry.[5] Nowhere in the Kirchgestner case is found any "distinction" such as made in the instant case, yet it is cited as one of the "great" majority of cases supporting such "distinction." This seems to be inaccurate reporting, as it was in citing the Anderson case in the main opinion. It is highly significant that the Utah Law Review article did not mention the Kirchgestner case in this respect.[6] It is even more sig-

2. 47 Utah 614, 155 P. 446 (1916). See 171 A.L.R.2d 100, § 5, citing Anderson v. O.S.L. Ry.
3. 118 Utah 20, 218 P.2d 685 (1950).
4. 45 U.S.C.A. § 51 et seq. (in effect long before the Kirchgestner case).

5. Note 2, supra.
6. Apparently or almost obviously because that case was an F.E.L.A. case subject to federal law and *not* a state case subject to state law.

nificant that the Law Review article *did* mention the Anderson case favorably as being the state law. Also, it is interesting to note that the Kirchgestner case at no time mentioned or even discussed the Anderson case.

The only quotation of the language of the Kirchgestner case in purported support of the main opinion's so-called "distinction" has no application to the instant case. The main opinion cannot be serious in its quotation, since such quotation necessarily would include unknown consequences of a *known injury* as being the subject of rescission because of mistake, which the main opinion concedes are barred by a release irrespective of any urgence by plaintiff of mutual mistake. In espousing such language, the main opinion, with complete inconsistency, destroys its argument about distinguishing "unknown" injury from consequences of a "known" injury.

It appears that great liberality is extended under the federal act in mistake cases, favoring the voiding of releases based thereon,—perhaps because of the liberality of the act itself, what with its provisions eliminating defenses of assumption of risk and contributory negligence, and because of the comparative negligence aspect of its cases which are not applicable

in our state and others. But neither these facts, nor the Kirchgestner case can support the main opinion here, since the matter is governed by state, not federal law.

The next case cited in the main opinion, Hoopes v. Lamb,[7] involving aggravation of a known injury, *did* recognize the distinction but certainly reserved the question of unknown injury when it said, "It is unnecessary for us to decide whether the parties * * * intended in fact to cover injuries both known or unknown." Nonetheless it *did* hold the release to be binding on consequences of a known injury, leaving the other horn of the distinction for future impaling considerations.

The only other case cited in the main opinion was Ranta v. Rake,[8] which adheres to a school of thought where the plaintiff may disavow his written contract when it turns out that he made an improvident settlement. It, like the main opinion here, simply flouts the well-established rule in Utah and elsewhere that a person may execute a contract and be bound by its terms, although he made a bad bargain. It simply espouses cases that depart from contract terms on the ground they are sui juris,[9] that the facts show mutual mistake where they are at best unilateral,[10] and other "I don't give a damn for contract principles" cases,[11] all of which reflect

7. 102 Ariz. 335, 429 P.2d 447 (1967).
8. 91 Idaho 376, 421 P.2d 747 (1967).
9. 71 A.L.R.2d §§ 2, 3; Clancy v. Pacenti, 15 Ill.App.2d 171, 145 N.E.2d 802 (1957).

10. 71 A.L.R.2d § 4.
11. Id., et seq.

empathy for one who makes a bad bargain, with utter disrespect for written word or signature. These cases do not reflect "the great majority of decisions" recognizing the distinction stated and followed by the main opinion. They include cases that relieve from consequences of a known injury or an unknown injury. Eliminate the Anderson case, the Kirchgestner case, the Ranta case, the F.E.L.A. cases and the "I don't give a damn" cases, which do *not* recognize the distinction to which the main opinion subscribes, and you will find that "the great majority" mentioned may be but a handful of free-pass, give-away fans in the bleachers.

It is interesting to note that in Ranta v. Rake, in recognizing the disagreeing Oregon case of Wheeler v. White,[12] but rejecting it, offered an apologia for it by saying, "It will be noted there was a strong dissent to this opinion." The Idaho case did not tender any equivalent cum laude to the two dissents in the 3–2 Ranta squeaker.

No doubt this decision will surprise insurance companies and some of the best legal minds on construction of contracts, particularly insurance contracts, and more particularly the standard insurance release, some of whose innards now have been removed in Utah by a legal scalpel of illogic and gratuitous, but unwarranted interpretation of words.

If the results called for in written instruments are unpalatable, the legislature might flavor it a bit but it is not our job, absent language in the contract making it clearly against public policy. The main opinion here urges no legislative interdiction or justification for its conclusion, nor any language that taints the release as being offensive to public policy.

What the main opinion does is to prevent any effective or lasting settlement for injuries of which the parties are unaware at the time of settlement (even though the written release signed by the releasor says such injuries and the consequences thereof forever *are* barred), but that a claim for the consequences of a *known* injury *is* forever barred,—albeit such consequences may reflect an injury worse by a hundredfold than that reflected by the consequences of an *unknown* injury. Such a result simply is ridiculous, especially where both parties solemnly have put their signatures to a document that clearly releases any claim for *any* injury *or the consequences thereof* whether the injury be *known* or *unknown* at the time of settlement and release.

12. 229 Or. 360, 366 P.2d 527 (1961). The dissenting opinion discusses this case at some length, and it needs no discussion here, the author of this dissent agreeing with the observations and decision of the Wheeler case as well as all of the observations and conclusions incorporated in Mr. Justice Callister's dissent.

Aside from what has been said above, it is diffficult for this writer to understand why anyone is talking about mutual mistake at all. Plaintiff himself developed the facts through his own physician, who deified them with his signature. Assuming his diagnosis to have been wrong, the insurance company wasn't mistaken about anything. It simply paid an amount which was acceptable to its assured, and conceivably would have paid a different amount if the second-guessing physician had performed the operation before the release had been executed. No one in this case urges that the insurance agent practiced any fraud, deceit, coercion, concealment or double dealing of any kind. Under the facts of this case, and as a matter of law there could be nothing more than a unilateral mistake of fact,—probably none at all. It is rather absurd even to cogitate that a nonexpert, lay insurance agent, with no medical background, would be a party to a mutual mistake where he relied on the diagnosis of the releasor's own doctor, unless it is urged that he was guilty of fraud, concealment, coercion and the like, —as was not the case here.

If one could circumvent the plain, unambiguous terms of a release under the circumstances of the instant case, where there is no hint of fraud, coercion or other ulterior motive, but only a present mutual desire to settle a claim at arm's length between a sort of willing buyer and a willing seller, neither under compulsion, why would it not be as logical, possible, practical, to sanction the same kind of circumvention, if the claim had been reduced to judgment after a fair trial, which would allow, after judgment, another and another trial and judgment ad infinitum on the advent of successively discovered, unanticipated complications?

The language and effect of a release, in Utah, has been relegated to the realm of the ridiculous.