PAUL CHRISTIANSEN

*v.*

THE WILLIAM GRAVER TANK WORKS.

*Opinion filed October 23, 1906.*

1. MASTER AND SERVANT—*when servant assumes risk of injury.* An experienced adult servant who continues to work with a machine with full knowledge that certain cog-wheels are partially exposed and not sufficiently guarded assumes the risk of being injured thereby, and cannot recover from the master in case such injury is suffered.

2. SAME—*when a servant is charged with knowledge of danger from known defect.* While the rule that a servant assumes the ordinary risks of his employment is subject to the limitation that he must have knowledge not only of the existence of the defective condition but also of the danger therefrom, yet if the danger is so obvious as to be apparent to a person of ordinary intelligence the law will charge the servant with knowledge of the danger.

3. CONFLICT OF LAWS—*when law of a foreign State controls in personal injury case.* An action brought in this State by an employee against his employer to recover for personal injury received while performing his duties in a foreign State in which the contract of employment was made is governed by the law of the foreign State, even though the action is transitory and may be brought in this State if service can be had.

4. SAME—*proof of foreign law should be made to the court and not to the jury.* To prove the law of a foreign State it is proper to introduce the pertinent statutes and reported decisions of the courts of that State in evidence before the court and out of the presence of the jury.

5. PLEADING—*when foreign law need not be specially pleaded.* In a personal injury case by a servant against his master to recover for an injury received in a foreign State in which the contract of employment was made, the defendant, under a plea of not guilty, may introduce, as part of his defense, the law of the foreign State, in so far as it is material, to show that he is not liable to respond in damages for plaintiff's injury.

6. WAIVER—*when objection that foreign law was not pleaded is waived.* An objection that the defendant in a personal injury case could not make proof of the law of the foreign State because the same had not been pleaded, is waived where the only objection to the introduction of the proof was that it should not be received in the absence of the jury.

7. TRIAL—*testimony cannot be disregarded because witness is an employee of defendant.* The jury cannot disregard the testimony of witnesses for the defendant in a personal injury case merely because they were, or had been, in the defendant's employ.

8. SAME—*when limiting argument to forty-five minutes is not improper.* Limiting the oral argument in a personal injury case to forty-five minutes on a side is not an abuse of the court's discretion, where the issues are not complicated and the testimony is not voluminous nor conflicting, save upon one or two points.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

WING & WING, and ELA, GROVER & GRAVES, for appellant.

LACKNER, BUTZ & MILLER, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action on the case commenced by the appellant in the superior court of Cook county against the appellee to recover damages for an injury to his right hand and arm, necessitating amputation of the arm below the elbow, alleged to have been sustained by him, while in the employ of appellee, by having the same crushed between the wheels of a punching machine operated by appellee by steam power and used for punching rivet holes in heavy steel plates, and upon which appellant, at the time of his injury, was working as a helper to the workman in charge of the machine.

The declaration contained six counts. The first and third counts charged the appellee with negligence in failing to properly cover the cog-wheels of said punching machine so as to prevent the appellant from coming in contact with said cogs when at work upon said machine; the second, in failing to warn the appellant of the danger he incurred, aris-

ing from the unprotected cog-wheels upon said punching machine, while he was at work, which danger was known to the appellee and unknown to the appellant; the fourth, in permitting the floor near said cog-wheels to become oily, greasy and slippery, whereby the appellant slipped and fell and thrust his hand and arm between said cog-wheels; the fifth, in that the space wherein appellant was directed to work in and about said punching machine was cramped and insufficient in size and was improperly lighted; and the sixth, in improperly conducting its business and in running said punching machine in an improper manner. The general issue was pleaded and a trial was had, which resulted in a verdict and judgment in favor of the appellee, which judgment has been affirmed by the Appellate Court for the First District, and a further appeal has been prosecuted to this court.

The punching machine was constructed of iron, was about four feet high, three feet long and ten inches wide at its narrowest and twenty-eight inches wide at its widest point, and stood east and west upon two two-inch planks in the shop of appellee. The punch was at the west end of the machine, and the gearing which propelled the punch, consisting of a cog-wheel forty inches in diameter, a cog-wheel six inches in diameter and a shaft about three feet long, which passed through the small cog-wheel, with two pulleys and a large drive-wheel thereon, was at the east end of the machine. The gearing was boxed in upon the south, east and north sides, the west side being partially open. A horizontal board ten inches wide, nailed at the ends to posts, passed on the west side of the cog-wheels, about thirty inches from the ground, and was fitted down to the shaft which passed through the small cog-wheel, in such manner as to cover those portions of the wheels where they meshed together, the large wheel in part showing above and the small wheel in part below the said board. There was a table twenty-five feet long situated immediately west

of the punching machine, which could be moved north and south and upon which the steel plates were fastened while being punched. The workman in charge of the machine stood upon the west side of said table, facing east, and the helper upon the east side of the table, facing west, both standing near the west end of the punching machine when the machine was in operation. When they were in those positions the cog-wheels, where they meshed, were about two and one-half feet in the rear of the helper and in the rear of the east end of the punching machine. To prevent the punch, when at work, from heating, the helper placed upon the portion of the plate being punched, a soapy, oily substance. The machine was constructed so it would punch in the same sheet more than one row of holes. If more than one row of holes was to be punched, the workman in charge of the machine, after the first row was punched, marked the places where the second row of holes was to be punched with a pencil, by a pattern, in which event it was the duty of the helper to wipe the oil and soap from the plate so that the pencil marks would show plainly. This he did with cotton waste which he held in his hand, and in some instances he put sand upon the plate before he wiped it off. On the occasion when appellant was injured he was acting as a helper to Clay Barrion, and the punching machine was being used to punch two rows of holes in the ends of steel plates, which plates were about ten feet long. The first row of holes had been punched, and the appellant had wiped off the plate preparatory to its being marked by Barrion for the second row of holes. He had just completed the cleaning of the plate and Barrion had passed from the west side of the table around its south end to the south side of the punching machine, with a view to mark the second row of holes upon the plate, when the waste in the right hand of appellant, which he says was as large as a boy's cap, was caught between the two cog-wheels and appellant's hand and arm were drawn between the cogs. Appellant called for

help and Barrion seized him around the body, and by their united effort the arm was pulled out from between the cogs.

The appellant was twenty-eight years of age at the time he was injured. He had worked in and about appellee's shop at different times for a number of years, and had worked upon punching machines, although of a different pattern from that upon which he was injured, as a helper, before his injury, and upon the particular machine for several days before he was hurt,—he says five days, but a number of witnesses place it at as long a time as two weeks. During that time it was his duty to clean and oil said punching machine daily and to keep the floor about the machine in proper condition, and the cog-wheels between which his hand and arm were caught were in plain view from where he performed his work at the time he cleaned and oiled or worked at the machine.

Three grounds are urged in this court as reasons for sustaining the judgment of the Appellate Court: First, that the appellant was guilty of contributory negligence in flipping or striking the waste in his hand against the lower end of said board at the point where the cogs meshed, for the purpose of knocking off the sand or grease therefrom; second, that appellee was not guilty of the negligence charged against it in the several counts of the declaration; and third, that the appellant assumed the risk of being injured by means of the cog-wheels between which his hand and arm were crushed.

It appears that between the point at which the two cog-wheels met and the place where appellant stood while performing his work was located the ten-inch board heretofore referred to, the lower edge of which ran over the top of the shaft upon which the small cog-wheel was situated, and extended down two and one-half inches below the point at which the cogs upon the two wheels meshed together. The point at which the two wheels meshed together was from fourteen to sixteen inches north of the most northerly point

at which a man could stand when working upon the south side of the punching machine, owing to the construction of the machine. There was also a rise in the floor of six inches just west of the ten-inch board, and a shelf parallel to and below the board, and also an upright board extending from the upper edge of the ten-inch board at a point just west of the large cog-wheel, to the height of that wheel. The appellant testified that when Barrion came around to the east side of the table to mark the plate he stepped back and turned around to get out of Barrion's way, and as he turned around he lost his balance, and before he knew anything more his hand was between the cogs; that he could not tell whether he lost his balance before or after he got the waste in the cogs. Two witnesses testified that after appellant had wiped off the plate, and just as he was about to surrender his place to Barrion, he flipped or struck the waste which he held in his right hand against the bottom of the ten-inch board back of him, near the point where the cog-wheels came together, and that his hand and arm were immediately drawn into the cogs.

The theory of the appellee that the appellant was engaged in knocking the waste against the lower edge of the ten-inch board, and in so doing some portion of the waste came in contact with the cogs of the small wheel and the waste and the hand and arm of appellant were drawn in between the cogs of the two moving wheels, is amply supported by the evidence, while the theory of appellant that he slipped and fell, and in so doing thrust his hand upwards under the lower edge of said board and between said cog-wheels, we think is inconsistent with many of the uncontroverted facts found in this record. The appellant was aware of the location of said cog-wheels with reference to the bottom of said board, and from his experience as a man must have known it would be dangerous to allow said waste to come in contact with said moving cog-wheels while being held in his hand, and the evidence fairly tended to show

said cog-wheels were amply protected; and as the questions of negligence and contributory negligence are usually questions of fact for the jury and not questions of law for the court, in view of all the facts proven in this case we are of opinion the court properly submitted the question of the negligence of the appellee and the contributory negligence of the appellant to the jury, and, the jury having found upon those propositions in favor of appellee, that this court cannot say, as a matter of law, their findings were not justified by the evidence.

The same may be said with reference to the contention that the risk was assumed by appellant. The appellant was an experienced workman, and was familiar with the punching machine and its gearing and attachments and the location of the cog-wheels between which his hand and arm were caught, and the law is well settled that where a servant has knowledge of a defect in a machine with which he is put to work or that portions thereof are insufficiently guarded and protected, and with knowledge of such defect or unguarded and unprotected condition continues to work with or upon the machine, he assumes the risk of being injured therefrom and cannot recover for an injury suffered in the course of the business about which he is employed. In *Camp Point Manf. Co.* v. *Ballou,* 71 Ill. 417, on page 419, the doctrine of assumed risk is thus stated: "An employee cannot recover for an injury suffered in the course of the business about which he is employed, from defective machinery used therein, after he had knowledge of the defect and continued his work, it being held that upon becoming aware of the defective condition of such machinery he should desist from his employment; but if he does not do so and chooses to continue on, he is deemed to have assumed the risk of such defects." And in *Simmons* v. *Chicago and Tomah Railroad Co.* 110 Ill. 340, on page 347: "If a servant, knowing the hazard of his employment as the business is conducted, is injured while engaged therein, he cannot

maintain an action against the master for the injury merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury." And in *East St. Louis Ice and Cold Storage Co.* v. *Crow,* 155 Ill. 74, on page 75: "If the injury was the result of obvious defects in the barge where he was working, or from causes known to him or which he might have known in the exercise of due care, he cannot recover." And in *Pittsburg Bridge Co.* v. *Walker,* 170 Ill. 550, on page 555: "An employee assumes the risks of known dangers, and such as are so obvious that knowledge of their existence is fairly to be presumed." And in *Swift & Co.* v. *O'Neill,* 187 Ill. 337, on page 342: "It is well understood that, as between employer and employee, the latter assumes all the usual known dangers incident to the employment, and that he also takes upon himself the hazard of the use of defective tools and machinery, if, after the employment, he knows of the defect but voluntarily continues in the employment without objection." And in *Chicago and Eastern Illinois Railroad Co.* v. *Heerey,* 203 Ill. 492, on page 497, it was said: "It is also the rule that an employee of sufficient age and experience is chargeable with knowledge of the ordinary conditions under which the business is conducted and its ordinary risks and hazards, and will be presumed to have notice of and to have assumed all such risks and hazards which to a person of his experience and understanding are, or ought to be, patent and obvious. If a defect is so plain and obvious to the senses that in the exercise of ordinary care the employee would discover it, and he continues in the employment without complaint and without any assurance by the master that the defect will be repaired or the danger removed, he assumes the risk arising from it." And in *Swanson* v. *City of Lafayette,* 134 Ind. 625, on page 637 (33 N. E. Rep. 1033): "Where a servant enters upon an employment which is, from its nature, necessarily hazardous, he assumes all the usual risks

and perils incident to the service. In such case it is settled that there is an implied contract on the part of such servant to waive any right of action against the master on account of an injury resulting from the risk necessarily incident to the service upon which he enters. Where the danger is alike open to the observation of all, both the master and the servant are upon an equality, and the master is not liable for an injury resulting from the dangers incident to the business." And in *Louisville and Nashville Railroad Co.* v. *Kemper,* 147 Ind. 561, on page 565, (47 N. E. Rep. 215,) it was said: "Where defects connected with the service are open and obvious alike to the master and the servant, and the servant voluntarily continues in the service and incurs the hazards of such defects, he thereby assumes the perils thereof and may not recover for injuries sustained therefrom."

The appellant was injured at East Chicago, in the State of Indiana, and the contention is made that, the action having been brought in this State, the law of the State of Illinois controls the right of recovery. The trial court instructed the jury that the law of the State of Indiana controlled. The appellant's contract of employment was made in Indiana, to be performed in that State, and was made with reference to the law of that State, and while the action is transitory and may be brought in this State if service can be had upon the defendant in this State, there can be no doubt but that the law of the State of Indiana controls in determining whether the appellant is entitled to recover. *Herrick* v. *Minneapolis and St. Louis Railway Co.* 31 Minn. 11; *Leonard* v. *Columbia Steam and Navigation Co.* 84 N. Y. 48; *Dennick* v. *Central Railroad Co. of New Jersey,* 103 U. S. 11.

To establish the law of the State of Indiana with reference to actions of this character, the appellee introduced in evidence before the court, and out of the presence of the jury, certain statutes and reported decisions of the Appel-

late and Supreme Courts of that State, and it is said by the appellant the action of the court in that regard was erroneous, and it is urged if the law of Indiana is to control, that then the court should have received in evidence said statutes and reported decisions in the presence of the jury and allowed the jury to determine from the Indiana statutes and reported decisions of the courts of that State the law of that State, and whether under the law of that State, as found by them, the appellee was liable. While there is some conflict in the authorities upon the question, the great weight of authority, and the better reason, we think, supports the view that while a foreign law must be proved as a fact, the proof thereof, in a case like this, should be made to the court and not to the jury. (1 Greenleaf on Evidence, sec. 486; 1 Thompson on Trials, sec. 1054; 13 Am. & Eng. Ency. of Law,—2d ed.—p. 1071; *Bank of China* v. *Morse,* 168 N. Y. 458, (61 N. E. Rep. 774); *Pickard* v. *Bailey,* 26 N. H. 152.) Mr. Greenleaf thus lays down the law upon the subject (sec. 486) : "The established doctrine now is that no court takes judicial notice of the laws of a foreign country, but they must be proved as facts. And the better opinion seems to be that this proof must be made to the court, rather than to the jury. 'For,' observes Mr. Justice Storey, 'all matters of law are properly referable to the court, and the object of the proof of foreign laws is to enable the court to instruct the jury what, in point of law, is the result of the foreign law to be applied to the matters in controversy before them.' "

It is also urged that the court erred in receiving in evidence said statutes and reported decisions, by reason of the fact that they had not been pleaded by appellee in defense of the action. The general rule is that a foreign law must be pleaded. That rule has its exceptions, and it does not apply in a case like this. The plea of not guilty was filed, and under that plea the appellee was properly permitted to introduce in proof, as a part of its defense, the law of the State

of Indiana, so far as it was material to show there was no liability resting upon appellee to respond in damages to appellant for the injury which he had sustained. In *City of Chicago* v. *Babcock,* 143 Ill. 358, on page 364, it was said: "In such an action [an action on the case] the defendant is permitted, under the general issue, to give in evidence a release, a former recovery, a satisfaction, or any other matter *ex post facto* which shows that the cause of action has been discharged or that in equity and conscience the plaintiff ought not to recover." In *Thompson-Houston Electric Co.* v. *Palmer,* 52 Minn. 174, it was held that the laws of another State, as to pleading and proof, stand upon the same footing as any other facts, and are not required to be pleaded when they are mere matters of evidence. Furthermore, the appellant, when the statutes of Indiana and the decisions of the Appellate and Supreme Courts of that State were offered in evidence, objected to having them read in the presence of the jury and stated that he did not object to their being read to the court, and at no time, so far as we have observed, raised the question in the court below that said laws had not been properly pleaded. The appellant, therefore, seems to have waived the right to raise the questions that the statute law and decisions of the courts of Indiana were not submitted to the jury or were not properly pleaded, at this time, although those questions have been fully discussed in the briefs filed by the respective parties.

The court gave to the jury, on behalf of appellee, thirty-four instructions, the correctness of the most of which is challenged by appellant and the objections thereto are elaborately argued, and a large number are criticised on the ground that they fail to contain the limitation that the appellant must have appreciated the danger and hazard which he was exposed to, as well as to have had knowledge that the cog-wheels in which he caught his hand and arm were not properly guarded and protected. The rule that an employee is presumed to have assumed the ordinary risks in-

cident to the employment in which he is engaged is subject to the limitation that he must have knowledge not only of the existence of the defect, but must also be chargeable with knowledge that the defect exposes him to danger. (*Consolidated Coal Co.* v. *Haenni,* 146 Ill. 614; *Union Show Case Co.* v. *Blindauer,* 175 id. 325.) If, however, the danger arising from the defect is so obvious as to be apparent to a person of ordinary intelligence, the law will charge the servant with knowledge of the danger. (*Chicago and Eastern Illinois Railroad Co.* v. *Heerey, supra; Montgomery Coal Co.* v. *Barringer,* 218 id. 327.) In the *Barringer case,* on page 331, in discussing the limitation to the general rule relative to assumption of risks, above referred to, the court said: "The servant must not only have knowledge of the defect in the appliance or place, but must appreciate the danger to him when using the appliance or working in the place, in order to relieve the master from liability. * * * But where the defect in the appliance or place is known and the danger is obvious to a man of ordinary intelligence such exception to said rule ought not to be applied." Here the appellant knew of the condition of the cogs at the point where the wheels meshed together, and the effect upon his hand and arm if placed between said cogs when in motion was apparent to a person of the most ordinary mind. We think, therefore, the appellant, from his knowledge of the condition of the cogs, was chargeable with knowledge of the danger from placing his hand and arm in a position where they would be likely to be drawn between said cogwheels when they were moving, and that the limitation of the general rule that he must have appreciated that danger as well as have had knowledge of the condition of the cogwheels should not have been applied in this case, and that the element of danger referred to was properly omitted from the instructions on the ground that there was no evidence in the record upon which to base an instruction containing such limitation.

It is also urged that instructions 2 and 19 are erroneous in this: that they direct the jury not to take into account the fact of their employment by appellee in weighing the testimony of appellee's witnesses. We do not so understand those instructions. They only amounted to a direction to the jury that they had no right to disregard the testimony of the witnesses for the appellee simply because such witnesses were, or had been, in the employ of the appellee, which was a correct statement of the law.

Many other criticisms are made upon appellee's given instructions, the most of which are technical and refined. Suffice it to say that we have examined the entire series of instructions given on behalf of the appellee, and are of the opinion they substantially lay down the law of this case correctly and as it has been held in repeated decisions of the Appellate and Supreme Courts of the State of Indiana, the decisions of which courts upon the doctrine of assumed risk and negligence and contributory negligence appear, so far as they have been incorporated in this record, to be in substantial accord with the law of this State upon those subjects.

It is urged that the court erred in limiting the oral argument in this case before the jury to forty-five minutes on a side. The issues involved were not complicated and the testimony was not voluminous or conflicting save upon one or two points; and while parties litigant should have a fair opportunity for their attorneys to present their respective contentions in oral arguments to the jury, the trial judge must have some discretion to limit the oral arguments in cases tried before him, and from what is disclosed by this record we cannot discover that such discretion in this case was abused.

Finding no reversible error in this record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*