## STEELE v. ERIE R. CO.

District Court, W. D. New York.
July 18, 1930.

Supplemental Opinion Jan. 2, 1931.

Ward, Flynn, Spring & Tillou, of Buffalo, N. Y. (Dana L. Spring, of Buffalo, N. Y., of counsel), for plaintiff.

Moot, Sprague, Brownell & Marcy, of Buffalo, N. Y. (Welles V. Moot and Edward B. Horning, both of Buffalo, N. Y., of counsel), for defendant.

HAZEL, District Judge.

In this case, brought under the Federal Employers' Liability Act (45 USCA §§ 51–59) to recover damages for personal injuries sustained, the trial was to the court, jury having been regularly waived by the parties. It was proven that while engaged in interstate commerce employment, plaintiff on August 23, 1928, while in the discharge of his duties in using a grease gun of the plunger type, weighing 5 lbs., 12 inches long and 3 inches wide, supplied by defendant, received the injuries of which he complains. There was a wrench at the upper end of the gun, and in its use grease was forced into the side rods of the driving wheel on defendant's locomotive. It required considerable strength to operate the device, and, in using exertion to pull the wrench lever, the gun suddenly jumped out of the bushing into which it was screwed and forcibly struck plaintiff in the groin or testicle. Concededly the grease gun was defective owing to two-thirds of the screw threads being worn or frayed. Defendant was aware of its defective condition; complaint having been previously made by plaintiff to the foreman on duty.

The defenses are: (1) That after receiving the injury plaintiff executed a general release from liability in consideration of payment to him of $110; (2) that it was plaintiff's duty to take the defective grease gun to the machine shop for repairs; (3) denial of negligence, assumption of risk, and contributory negligence.

■ 1. I find that the release was signed by plaintiff under misapprehension or mutual mistake on his part and on the part of his attending physician as to the nature and extent of his injury, and in reliance upon statements of the latter, who was in the employ of defendant, that he would be relieved of his injury in a couple of weeks, and that there was no reason to fear any complications. That he relied upon such statements and the further statement of the doctor made over the telephone to defendant's claim agent that he would be able to do light work in a couple of weeks following the execution of the release. Subse-

quently, however, it was ascertained that his injury was more severe than had been represented to him, and he tendered back the amount paid; but it was not accepted.

■ There is conflict of testimony with relation to the information imparted to plaintiff regarding the nature of his injury; the attending physician testifying in substance that he informed plaintiff that the duration of his incapacity was doubtful, and that sometimes there was a recovery in two weeks, and in other instances it took longer. Although there was some uncertainty as to the precise duration of plaintiff's injury immediately after the injury was sustained, it is nevertheless evidenced that its seriousness and duration was not anticipated at the time of the execution of the release, which was six or seven weeks after the injury. It is inconceivable that he would have settled his claim for a nominal amount had he been informed of the necessity of an operation entailing a long lapse from work. Dr. Downey, defendant's witness, testified that he did not regard plaintiff's condition as serious, and that, in his opinion, he would be able to do light work in two or three weeks, and that his condition would continue to improve. Defendant contends that, since plaintiff was aware of the uncertainty as to time of recovery, he cannot now recede from the adjustment. Upon this point, importance is attached to Chicago & N. W. R. Co. v. Wilcox (C. C. A.) 116 F. 913, which, in effect, holds that a release of liability will not be set aside for either fraud or mistake unless the evidence in relation thereto is clear and convincing, and, further, that the burden rests upon the party attacking the agreement. In the case cited, the real nature of the injuries, to wit, a broken hip, a bad break, was fully disclosed by the attending physician who told her during the negotiations for settlement that there was no doubt but that she would be well in a year, and prior thereto; while in this case plaintiff was unaware of the seriousness of his injury or of the possibility of any future menacing developments, believing, with some reserve, that he would be able to resume light work in a few weeks. However, on conferring with another surgeon, an operation was found necessary, and plaintiff was unable to do any work for some time thereafter. The facts are not similar to the Wilcox Case, where the court based its decision upon the belief of the plaintiff that she would be well in a year, and her mistake in this particular constituted merely a mistake of opinion, and was no ground for avoiding the release. Plaintiff's injury was rare, and it seems to me that he was warranted in relying upon the statements of Dr. Downey as to the duration of his disability. In G. N. R. Co. v. Fowler, 136 F. 118, 121 (9th Cir.), the court, after stating the facts, said: "But it is equally true that a mutual mistake of fact or an innocent misrepresentation of the facts of the releasor's injury, made by the releasee's physician, may be effective to avoid a release induced thereby"; and it distinguished the Wilcox Case, saying that in that case there was no mistake as to the serious nature of the injury, and that she was advised to await future developments before making the settlement. See, also, Lumley v. Wabash R. Co. (C. C. A.) 76 F. 66, and G. N. R. Co. v. Reid (C. C. A.) 245 F. 86. The defense of release from liability in this case is not established, and the release must be vacated.

■ 2. It undoubtedly was the common practice for a workman to have a defective grease gun repaired before using it, by either having the machinist cut off the defective threads, or rethreading the bushing. Plaintiff testified that he searched for an unimpaired grease gun but none was available; some were in use and others in the locked lockers of the day men; that, when he found the defective grease gun, he complained to the foreman and told him he could not find a good one; that the one he had found "is all there is"; that the foreman replied that he would have to go to work and use it, and get the engines out. It was not shown that at such time, five o'clock in the afternoon, there was a mechanic available to rethread the device. Plaintiff was required to obey the order of the foreman who occupied the position of vice principal; and whether he assumed the risk of using the defective gun depended upon his complaint and objection to its use. The rule of assumption of risk in using a defective appliance applies only when the appliance is used without objection. Here there was objection and direction from defendant to do the work with a defective instrumentality. Choctaw, etc., v. McDade, 191 U. S. 68, 24 S. Ct. 24, 48 L. Ed. 96; T. & P. R. Co. v. Harvey, 228 U. S. 319, 33 S. Ct. 518, 57 L. Ed. 852. His testimony was contradicted by the foreman whose recollection was indefinite as to the conversation, while that of plaintiff impressed me as being truthful. The defendant, true enough, was not the insurer of the safety of its workman, and the duty it owed plaintiff was to pro-

vide him with reasonably safe tools and appliances. In this particular, I find it did not exercise due care, but permitted plaintiff to use a tool or appliance which was known by it to be defective. That plaintiff also was aware that the grease gun was in impaired condition, in view of his objection to its use and the direction from his foreman to use it on the locomotive, was not an assumption of risk as a matter of law. N. Y., N. H. & H. R. Co. v. Vizvari (C. C. A.) 210 F. 118, L. R. A. 1915C, 9; Lehigh Valley R. Co. v. Skoczyla (C. C.) 278 F. 378; and I further find that the evidence negatives assumption of risk by the plaintiff in the use of the device in question.[1]

As to the damages: Plaintiff at the time of the injury was earning $25 per week, and altogether has been out of employment for about 21 months. An award of $2,500, in addition to his expenses at the hospital, amounting to $36, and $100 to Dr. Parmenter for the operation, I think will adequately compensate him for the injuries and loss sustained. A decree may be entered with costs.

### Supplemental Opinion.

The foregoing was typed prior to the receipt of defendant's reply brief to plaintiff's answer to defendant's reply brief, and, on examination, I perceive no substantial ground to alter my original views. I did not, and do not, find that Dr. Downey's statements to plaintiff were fraudulently or deceptively made, but am of opinion that said statements made by him to plaintiff and his statements over the telephone were reflective of his honest belief. By reason thereof, plaintiff was unaware of the seriousness of his injury, and his subsequent condition shows that there was a mutual mistake with relation to the probable duration of his disability. Accordingly, I think the principle announced by Judge Kenyon in Lion Oil Co. v. Albritton (C. C. A.) 21 F.(2d) 280, viz., that in a case where there was a mutual mistake, the release may be set aside, applies. More need not be said in view of what has been said before, except that on the point of assumption of risk I still think that the facts come under the decisions heretofore cited (N. Y., N. H. & H. R. R. Co. v. Vizvari (C. C. A.) 210 F. 118, L. R. A. 1915C, 9; and L. V. R. Co. v. Skoczyla (C. C. A.) 278 F. 378), and in view of the evidence that plaintiff used the defective grease gun after asserting objection to its use, and received instructions from foreman Kopper to use the gun, I am disinclined to reduce the amount of damages heretofore determined upon, on the theory of contributory negligence.

Decree for plaintiff, with costs.

---

[1] The danger of the gun flying out of the socket was not obvious to plaintiff by using ordinary caution. The threads were worn at the lower end, and the gun had previously been used by him and by the witness Link without mishap; and it may well be that plaintiff supposed, after being ordered to use the gun, that he could again force it into its proper position for successful use.