## SCHEER v. ROCKNE MOTORS CORPORATION.
### No. 207.

Circuit Court of Appeals, Second Circuit.

Feb. 5, 1934.

Ulysses S. Thomas, of Buffalo, N. Y. (George Clinton, Jr., of Buffalo, N. Y., of counsel), for appellant.

Franklin R. Brown, J. Edmund Kelly, and Rann, Vaughan, Brown & Sturtevant, all of Buffalo, N. Y., for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff sued the defendant, a motor-car manufacturer and dealer, for injuries suffered while she was a passenger in a motor-car belonging to it, and driven by one, Clemens, a sales agent in its employ, stationed at Buffalo. His territory included parts of New York and Pennsylvania, and it was his custom and duty to cover it in a motor put at his disposal by the defendant. We may assume merely for the purposes of

this appeal, because we do not so decide, that there was evidence that he had authority to take it also into Canada. On the day in question he set out from Buffalo on an errand to Windsor, Ontario; whether on the defendant's business or his own was in dispute. He invited the plaintiff to go along, and when near Welland his car careened, fell upon her and caused her very severe injuries. A jury might have found, as this one did, that this accident was due to his reckless driving at high speed. While the plaintiff was in a hospital in Welland, Clemens, being then under arrest for criminal negligence, got from her a release of himself and the defendant from any liability; this in consideration of his promise to pay her expenses while in the hospital. She testified that at the time and as an inducement, he told her that her injuries were not serious, and that she would be about again in a few weeks; and her doctor testified that though he told her that her back was broken, he too assured her that she would be able to leave the hospital in a few weeks. In reliance upon these statements, she gave the release, which Clemens destroyed as soon as it had served his purpose in his prosecution.

There is a statute in Ontario which provides that "the owner of a motor vehicle shall be liable for loss or damage sustained by any person by reason of negligence in the operation of such motor vehicle on a highway unless such motor vehicle was without the owner's consent in the possession of some person other than the owner or his chauffeur." (Section 41-A of the Ontario Highway Traffic Act, introduced as an amendment by section 11 of chapter 30 of the Provincial Laws of 1930.) Two Canadian barristers testified as to its meaning; one, called by the plaintiff, that it was to be read literally; the other that the owner was immune if the driver, though lawfully in possession of the car, was using it altogether beyond the scope of his authority, or in unauthorized territory. The judge refused to leave to the jury the interpretation of the section notwithstanding this difference of opinion; he told them that if the defendant had given possession of the car to Clemens, it made itself liable for his negligence. In this he therefore took the view of the plaintiff's expert, and in addition he necessarily ruled that the defendant might be liable even though it had not authorized Clemens to go into the province at all. He also charged them that if the plaintiff had been induced to give the release through a mistake of fact, it would not bar her recovery; and that her contributory negligence

was for them to determine; that is, whether in view of the way in which Clemens had been driving the car, she should have done more than protest, as she said she had; whether she ought to have made him stop, have left him and gone to her destination by some other means. The jury found a verdict of $40,000 for the plaintiff, on which judgment was entered.

The defendant raised a number of objections at the trial of which we need discuss only the following: (1) That the Ontario statute, however interpreted, could not impose liability on the defendant, even though it had authorized Clemens to take the car into that province, unless his errand was within the scope of his authority. (2) That the statute should not be interpreted to make the owner liable if the driver exceeded his authority, or went beyond the limits to which he was restricted. (3) That the judge should at least have left to the jury the question whether the defendant had authorized Clemens to take the car into Ontario, even though it would have been liable if it had. (4) That the plaintiff had not proved any facts which would avoid the release. (5) That the judge should have directed a verdict against her because of her contributory negligence.

In general it is now well-settled law that the law of the place where the putative wrongdoer's conduct occurs determines his liability, when that question comes up in another jurisdiction. Slater v. Mexican National Ry. Co., 194 U. S. 120, 126, 24 S. Ct. 581, 48 L. Ed. 900; American Banana Co. v. United Fruit Co., 213 U. S. 347, 356, 29 S. Ct. 511, 53 L. Ed. 826, 16 Ann. Cas. 1047; Spokane, etc., R. R. v. Whitley, 237 U. S. 487, 495, 35 S. Ct. 655, 59 L. Ed. 1060, L. R. A. 1915F, 736; Jarrett v. Wabash Ry. Co., 57 F.(2d) 669, 671 (C. C. A. 2); McDonald v. Mallory, 77 N. Y. 546, 33 Am. Rep. 664; Wooden v. Western, etc., R. R., 126 N. Y. 10, 26 N. E. 1050, 13 L. R. A. 458, 22 Am. St. Rep. 803; Restatement of Conflict of Laws, § 418. The wrongful act here in question took place in Ontario; it was Clemens's driving; Ontario might of course make him liable. But in imputing his liability to the defendant that law had to reach beyond its borders, for the only acts by which the defendant connected itself with him were in New York. It is indeed true that a principal may subject himself to liability from the acts of an agent whom he despatches to another state into which he never goes himself. He may make him an instrument of

his will as much as though he used inanimate means; if he does, he will be liable according to the law of the place where his purposes are effected, as much as though he were himself there present. Rex v. Brisac, 4 East. 164; Rex v. Oliphant, (1905), 2 K. B. 67; Thompson v. Crocker, 9 Pick. (Mass.) 59; Com. v. Blanding, 3 Pick. (Mass.) 304, 15 Am. Dec. 214; Adams v. People, 1 N. Y. 173; Lindsey v. State, 38 Ohio St. 507. But the judge did not charge the jury that they might find for the plaintiff in case Clemens was acting within the scope of his authority when he went to Canada; he told them that his mere possession of the car was enough. It is clear that the defendant did not give him authority to go to Canada merely by giving him the car. Unless more than that was shown, the law of Ontario could not reach the defendant; the charge gave it extra-territorial effect, as much as though that province had pretended to fix liability upon Clemens for injuries suffered in New York. As this went to the very heart of the case as it was presented to the jury, the judgment must be reversed.

■ Against the possibility of a new trial, we must go further and decide whether the defendant would also be immune if it had authorized Clemens to take the car to Ontario, but if his errand in this instance had still not been within the scope of his authority; that is, whether the Ontario law might impute his wrong to the defendant merely from sending him into the province. New York has a somewhat similar law (section 59 of the Vehicle and Traffic Act [Consol. Laws N. Y. c. 71]), but it does not impute liability regardless of restrictions on the driver's authority. Chaika v. Vandenberg, 252 N. Y. 101, 169 N. E. 103. It will not therefore serve here, even though we could say that the New York statute became an implied term in the authority putatively conferred on Clemens by giving him leave to take the car into Ontario. To hold the defendant regardless of Clemens's divergence from his instructions, some other principle must be found. We must remember that the question is never of enforcing a liability arising in another state; no court can do that but one of the state where it arose; in the case at bar this is acutely evident because the defendant was never there, and could fall under no liability until it went there. A liability implies a sanction, and a sanction a person to coerce. The sole question, here as always, is how far the court of the forum will adopt the law of another place as the standard for its own legal consequences. A court of New York would certainly impose a liability similar to that which Ontario imposed, if the defendant in that province gave consent to Clemens's possession; the act took place there, and such a liability is not abhorrent to her own notions of justice. Again, if the defendant, knowing of the Ontario statute, had sent Clemens into that province with the car, or authorized him to take it there, we cannot suppose that New York would hesitate. Such knowledge would color the authority granted so that it comprised an acceptance of the risk of liability. The only doubt can be as to whether knowledge of the statute is an essential. We think it is not. When a man goes into a new state he exposes himself to its laws; when he sends property there, it is similarly exposed; when he causes anything to occur there, he subjects himself to such legal consequences as that state may impose. And if he sends an agent there, he becomes at least one cause, though of course not the only cause, of whatever the agent does; not in the sense that he is liable under ordinary rules to be sure, but none the less he is a cause; his voluntary act is an element in the chain of those circumstances necessary to the result. Having become an author of the damage by his intervention in another state, the law of that state may determine whether liability shall ensue. There is nothing inherent or antecedently necessary in the conventional limitation of liability to such consequences as may be anticipated by ordinary foresight, within which limits the law of the state where the damage occurs concededly controls. No such limitation existed in ancient times, and the law is abandoning it in field after field; fault is by no means an inevitable condition of liability. Provided that the result be not too distasteful to the *mores* of the forum, we think that the state where the damage occurs may impute liability to one outside, if he be in fact the voluntary author of it though the sequence between his conduct and the damage would be too remote under ordinary principles.

This, which appears to us sound in principle, is we think the inevitable consequence of Young v. Masci, 289 U. S. 253, 53 S. Ct. 599, 77 L. Ed. 1158. It is true that the only point there before the Supreme Court was of the constitutionality of the New York statute; formally there is a distinction between that, and whether New Jersey ought to have raised a liability—a question of New Jersey law. But the same considerations de-

termine both questions. The Fourteenth Amendment would protect the owner only in case he had no means of avoiding liability; when he chose to intervene by proxy in New York no such injustice resulted as made unconstitutional the action of New Jersey in holding him liable. Precisely the same reasons ought to determine whether New Jersey should raise up a liability, analogous to that of New York. It was inevitable that the opinion should read equally as one on constitutional law, or on the conflict of laws. We regard it as authoritative in each aspect, and we hold that if the defendant authorized Clemens to take the car into Ontario it became liable to the extent contemplated by the statute.

■■ As to its proper meaning we can express ourselves only with diffidence; anything we may say must of course be understood as subject to correction by the decision of a Canadian court. We are unhappily forced to a conclusion without any very close decision, and in the face of a conflict of opinion between two well-qualified gentlemen of the Canadian bar. The only cases which seem to us near enough to be helpful are Le Bar v. Barber & Clarke, (1923) 3 D. L. R. 1147, and Wainio v. Beaudreault, (1927) 4 D. L. R. 1131, both in the Appellate Division of the Ontario Supreme Court; each involving another section of the act whose language was however closely like the critical phrase of section 41-A. In the first the owner had left his car in "cold storage," and the bailee took it out and used it on the highway. The owner was excused only by a vote of three to two, and it is apparent that the majority would not have exonerated him, if he had consented to the use of the car on a highway. In the second case the car was given to one Bredenburg, who let another drive it, though he was in it at the time. The owner was again excused, this time on the notion that the actual driver, a woman, was not in possession with the owner's consent. The most that the decision can be thought to hold is that the driver is the person "in possession"; and while perhaps that gives the word a somewhat uncommon meaning, certainly it was a highly reasonable one in the context. At any rate neither case, nor both together, are any ground for supposing that when possession has been given to the negligent driver, who has been authorized to use the car on a highway, it makes any difference that he has exceeded the scope of his authority as understood at common law, or has gone beyond his authorized territory. Indeed,

were that true, we should be at some loss to see just how the section changed the law at all. Finally we agree with the judge that the meaning of the statute is for the court, notwithstanding conflicting testimony of experts. Finney v. Guy, 189 U. S. 335, 342, 23 S. Ct. 558, 47 L. Ed. 839; Hanna v. Lichtenhein, 225 N. Y. 579, 122 N. E. 625; Fitzpatrick v. International Ry. Co., 252 N. Y. 127, 169 N. E. 112, 68 A. L. R. 801; Tarbell v. Grand Trunk Ry. Co., 96 Vt. 170, 118 A. 484, 34 A. L. R. 1444; Christiansen v. William Graver Tank Works, 223 Ill. 142, 79 N. E. 97, 7 Ann. Cas. 69; McCornick & Co. v. Citizens' Bank, 304 Mo. 270, 263 S. W. 152; Harrison v. Atlantic C. L. Ry., 168 N. C. 382, 84 S. E. 519.

■■ There was evidence to justify setting aside the release. Clemens had told the plaintiff that she was not seriously injured, merely had a strained back and would be about again in a short time; her doctor confirmed this though he did tell her her back was broken. These assurances were much more positive than those before the court in Chicago & N. W. Ry. v. Wilcox, 116 F. 913 (C. C. A. 8). The dicta of the majority we have already refused to follow, preferring Judge Thayer's dissent. Steele v. Erie R. R. Co. (D. C.) 54 F.(2d) 688; affirmed 54 F. (2d) 690 (C. C. A. 2). Cf. Great Northern Ry. v. Fowler, 136 F. 118 (C. C. A. 9). There is indeed no absolute line to be drawn between mistakes as to future, and as to present facts. To tell a layman who has been injured that he will be about again in a short time is to do more than prophesy about his recovery. No doubt it is a forecast, but it is ordinarily more than a forecast; it is an assurance as to his present condition, and so understood. Of course, the sufferer may be told all the facts and the forecast put to him strictly as such; so that he will know it to be no more than the declarant's prognosis. We may assume arguendo that that would not support a rescission. But it is difficult to be patient with the argument here made that this unhappy lady, not knowing that she was irrecoverably injured, but willing to help the author of that injury, should be denied all recovery because positive statements as to the gravity of her condition were accompanied by assurances that she would soon be about again. By what legerdemain the defendant, which wishes to use the release, expects to avoid the means by which Clemens procured it, passes our understanding. The issue was at best for the jury; and so was the question

of contributory negligence. Plainly there are no fixed standards of conduct applicable to the plaintiff's situation. No one who has sat beside a fast driver needs to be told of the embarrassment which follows his refusal to go more slowly, especially if the request be repeated. No doubt he may be so reckless, so inconsiderate and so persistent as to leave his passenger no alternative but to ask to be let out and to find his way home as best he may; but that is a heroic cure. If the passenger, as here, be a woman, far from her destination, who may find much difficulty in getting another conveyance, the best that a defendant can ask is that a jury shall weigh the conflicting considerations, and say whether her conduct conforms to that reasonable standard which it is their function to fix.

Judgment reversed; new trial ordered.