## KIRCHGESTNER v. DENVER & RIO GRANDE W. R. CO.

No. 7370. Decided May 17, 1950 (218 P.2d, 685).
Rehearing granted Dec. 14, 1950 (118 Utah 37; 225 P.2d., 754).
Judgment reversed June 19, 1951 (118 Utah 41; 233 P.2d., 699).

See 15 C.J.S., Compromise and Settlement sec. 54. Personal injury released, avoidance of, see note, 117 A.L.R. 1022. See, also, 45 Am. Jur. 683.

*Van Cott, Bagley, Cornwall & McCarthy, Clifford L. Ashton,* all Salt Lake City, for appellant.

*Rawlings, Wallace, Black & Roberts* and *Dwight L. King,* all Salt Lake City, for respondent.

WOLFE, Justice.

This action was brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. and the Safety Appliance Act, 45 U.S.C.A. § 11 et seq. by the respondent, plaintiff below, to recover damages for permanent and disabling injuries allegedly sustained by him while in the performance of his duties as a brakeman for the appellant railroad company, defendant below. Ten days after the alleged mishap, the plaintiff in consideration of $135 executed a general release discharging the defendant from all liability arising out of the accident. The defendant relied upon this release as a bar to the plaintiff's action but the jury found that the release had been entered into under a mutual mistake of fact as to the plaintiff's physical condition and awarded him damages in the amount of $4300.

Taking the evidence most favorable to the plaintiff, it appears that on June 26, 1948, while he was attempting to board one of the cars of the train on which he was working near Salida, Colorado, a rung or grab-iron which he grasped came loose causing him to fall to the ground, striking his back against a boulder; that he experienced no serious effect from the fall until the next morning when his back ached; that he thereupon consulted one Dr. Smith at a hospital in Salida maintained by the railroad employees who took X-ray pictures of his back, but being unable to find anything wrong with his back, gave the plaintiff some pills to take for his nerves; that the ache continued and consequently four or five days later he consulted Dr. C. R. Fuller at the same hospital who assured him that he would be "all right." Thereafter on July 6, 1948, one Merrill, the trainmaster's clerk at Salida sent the plaintiff to Pueblo, Colorado, to see the railroad's claim agent, M. V. Sayger. Before the plaintiff arrived Sayger telephoned Dr. Fuller and asked him whether the plaintiff was physically able to return to work. Dr. Fuller answered affirmatively. When the plaintiff reached Sayger's office the latter asked him if he was able to return to work and the plaintiff replied that he was able. There was no other discussion as to the plaintiff's condition or his injuries. There is a conflict in the testimony of the plaintiff and Sayger as to how they arrived at the amount of $135 as a settlement. The plaintiff testified that Sayger offered him $125, basing that amount on the loss of earnings sustained by the plaintiff. The plaintiff stated that he wanted $135 to which Sayger agreed.

The release which the plaintiff signed purported to release all claims which the plaintiff had or might thereafter have for any and all personal injuries sustained, whether then known or unknown, apparent or unapparent, and for loss of services. The release recited that the plaintiff understood that he could make no further claim against

the railroad even though his injuries proved to be more serious or different than he then knew them to be.

The defendant's principal contention upon this appeal is that the plaintiff failed to allege or produce evidence of facts which entitled the jury to set aside the release executed by the plaintiff on the ground that it had been entered into by the parties under a mutual mistake of fact. Since the legal effect of a release from liability arising under the Feleral Employment Liability Act is governed by federal law, we must determine the merit of the defendant's contention according to that law. *Ricketts* v. *Pennsylvania R. Co.*, 2 Cir., 153 F. 2d 757, 164 A. L. R. 387; *Irish* v. *Central Vermont Railway*, 2 Cir., 164 F. 2d 837; *Thompson* v. *Camp*, 6 Cir., 163 F. 2d 396.

The latest pronouncement of the Supreme Court of the United States dealing with the release of claims arising under the Federal Employers' Liability Act is *Callen* v. *Pennsylvania Ry. Co.*, 332 U. S. 625, 68 S. Ct. 296, 92 L. Ed. 242. There the plaintiff, a railroad brakeman, claimed to have suffered an injury to his back when he jumped for safety from a moving railroad car. For a consideration of $250 he executed a general release of all claims for personal injuries and for loss of time and expense which he then had or might thereafter have against the railroad. The release recited that the plaintiff read the agreement and understood that $250 was all he was to receive. Later the plaintiff commenced an action under the Federal Employer's Liability Act to recover damages for an alleged permanent back injury. He testified that he read and understood the release, knew what he was doing, and intended to waive any further claim that he might have against the railroad, but that he executed the release in reliance upon the claim agent's assurance that "there was nothing wrong" and that he "was all right to go back to the job". The railroad had procured no medical examination of the plaintiff. While the claim agent admitted that

at the time of the settlement he did not know that the plaintiff was suffering from the injuries which the doctors at the trial described, the railroad contended that it did not act from mistake as to the nature and extent of the plaintiff's injuries but settled with him for $250 because it believed there was no liability on its part. The Supreme Court affirmed the judgment of the Third Circuit Court of Appeals holding that under the evidence it was a jury question whether both parties acted from mistake as to the nature and extent of the plaintiff's injuries.

Another recent federal case in which a release was set aside on the ground of mutual mistake of fact is *Thompson* v. *Camp*, 6 Cir., 163 F. 2d 396. There one Irving Camp while working as a switchman for the St. Louis-San Francisco Railway Co. suffered a brain concussion and other injuries rendering him unconscious for three days. He was hospitalized and treated by a doctor employed by a hospital association to which he (Camp) contributed dues for the privilege of receiving hospital and medical benefits. Over a month after the accident occurred, Camp was pronounced "O.K." by the doctor and told he could go back to work. Camp contacted the claim agent for the railroad who told Camp that there was no liability on the part of the railroad, but that the railroad would settle for $500 which was approximately the amount that Camp had lost in earnings. No discussion took place as to Camp's condition of health, what had been his trouble or when he would be well. Camp accepted the $500 and executed a general release absolving the railroad from liability for claims which he then had or might have in the future. Camp returned to work but died two weeks later from a cerebral hemorrhage. The administratrix of Camp's estate brought an action against the railroad in which the release executed by Camp was relied upon as a bar to the action. The jury in the trial court found that the cerebral hemorrhage suffered by Camp was the result of the brain

concussion which he sustained. The jury also found that the release had been executed under a mutual mistake of fact and awarded the administratrix damages in the amount of $35,000. The Sixth Circuit Court of Appeals upheld the jury's finding because taking the evidence most favorable to the administratrix it appeared that Camp had been told by his doctor that he was "O.K."; that he could go back to work; that he would not require further medical treatment; and that he was not admonished by his doctor to restrict his physical activity. The evidence was also held to warrant the jury's conclusion that the claim agent was laboring under the mistake of fact that Camp had recovered from his injuries because he knew Camp had been released from his doctor's care and was making settlement in order to return to work, because there was no discussion as to his health or his condition to return to work, and because the settlement was based almost entirely upon Camp's loss of earnings.

A third recent case which is illuminative on the question involved in the instant case is *Union Pacific Railroad Co.* v. *Zimmer*, 87 Cal. App. 2d 524, 197 P. 2d 363, 365. There the defendant while working as a railroad switchman sustained an elbow fracture. A surgeon in the employ of the railroad operated on the arm and set it in a cast. When the cast was removed weeks later, the surgeon informed the defendant that:

"Your arm isn't going to be stiff. Your arm is all right. You go down to Omaha, they want to see you; get it settled up and get back to work."

The defendant proceeded to Omaha where he was first examined by a private physician who informed him that his arm had not yet reached maximum improvement but would improve as time elapsed. The railroad's claim agent had the defendant's arm examined by two railroad surgeons who reported that the arm "will come out all right" and that "you will have a good arm anyway." The following day the defendant in consideration of $965 re-

leased the railroad from all claims that he had or might thereafter have against it for injuries sustained, whether then known or unknown and whether greater than he then believed them to be. Two months later the plaintiff attempted to return to work but was unable to perform his duties as a switchman because of the impairment of his arm. Two operations were subsequently performed on the defendant's arm, but both proved unsuccessful and left him with an apparent permanent partial disability. The railroad expressed a willingness to pay the defendant an additional $2500 or $2600 for the additional wages lost, but no such payment was ever consummated. The defendant tendered re-payment of the consideration with interest thereon, and attempted to rescind the release on the grounds of fraud and mistake. The railroad refused to tender and brought an action for a declaration of its rights under the release. The jury in the trial court found in favor of the railroad on the issue of fraud, but found that the release was not valid and binding because it was entered into under a mutual mistake as to the seriousness and duration of the defendant's injury and that the release had been effectively rescinded. The district court of appeal affirmed the judgment of the trial court, holding that the jury's finding that the release had been entered into under a mutual mistake of fact was fully supported by the evidence. The court stated:

"The facts presented strongly repel the suggestion that the railroad intended the single payment of $965 to purchase absolution from an injury as serious and permanent as the present one subsequently turned out to be. The apparent willingness of the company officials to negotiate for a further settlement * * * on the basis of additional time lost, lends weight to this view. On the other hand, it is inconceivable that (the defendant) would have accepted a sum equal to a few months lost wages in full settlement for a permanent disabling injury. We think the evidence as a whole supports the conclusion that both parties shared a mistaken understanding that the condition of the (defendant's) arm was not serious, but was such that any temporary disability resulting therefrom would be of reasonably short duration. On his showing, relief was properly granted. See *Steel* v. *Erie R. Co., D. C. N. Y.*, 54 F. 2d 688, 689; *Scheer* v. *Rockne Motors Corp.*, 2 Cir., 68 F 2d 942, 945; *Thompson* v. *Camp*, 6 Cir., 163 F. 2d 396, 401; *Great*

*Northern Railway Co.* v. *Fowler,* 9 Cir., 136 F. 118; *Lion Oil Refining Co.* v. *Albritton,* 8 Cir., 21 F. 2d 280."

Turning now to the instant case, the defendant by its answer pleaded the general release executed by the plaintiff as a bar to his action. The plaintiff, by his reply, alleged that the release had been entered into by both parties under the belief that the plaintiff had not suffered any serious personal injury and that he had completely recovered from the effects of his fall, when in fact the plaintiff had suffered a serious and crippling injury which became evident to him soon after the signing of the release. Under the authority of the cases discussed above, the issue of whether there was a mutual mistake of fact was properly submitted to the jury. There is competent evidence that both parties entered into the release under the belief alleged by the plaintiff and that said belief was in fact erroneous. The plaintiff had been examined by two doctors who had been unable to find anything wrong with him and one of whom had told him that he would be "all right". The plaintiff expressed to Sayger that he thought he was able to return to work. Dr. Fuller had assured Sayger that the plaintiff was able to return to work. Sayger testified that he did not know at that time that the plaintiff was suffering from a disabling back injury and admitted that in making the settlement he (Sayger) acted upon that mistaken belief. The fact that the amount of the settlement closely approximates what the plaintiff had lost in earnings is an indication that both parties acted upon the belief that the plaintiff's sufferings were at an end or would be short-lived. We express no opinion whether a jury question would be presented had the plaintiff not sought medical advice and thus had no basis for believing his injuries were superficial, or had Sayger been without knowledge of the plaintiff's physical condition and his plans to return to work.

The defendant argues that even if the parties were

mutually mistaken with respect to the nature and extent of the plaintiff's injuries, such mistake is immaterial because the plaintiff by the release discharged all claims and causes of action which he then had or might thereafter have or claim on account of any and all personal injuries whether then known or unknown, apparent or unapparent, including complications arising from personal injuries, and that the very basis of the release was that the parties might be wholly mistaken as to the nature and extent of the injuries suffered by the plaintiff. However logical the defendant's argument may seem, the authorities are to the contrary. Because a release is as all-inclusive in its terms as legal ingenuity can make it and purports to release all possible claims arising out of an accident and is understood as such by the releasor, it will nevertheless be set aside when it can be shown that at the time of its execution both parties were laboring under a mutual mistake as to the extent of the injuries suffered by the releasor. *Union Pac. R. R. Co.* v. *Zimmer,* 87 Cal. App. 2d 524, 197 P. 2d 363; *Graham* v. *Atchison, T. & S. F. Ry. Co.,* 9 Cir., 176 F. 2d 819; *Tulsa City Lines* v. *Mains,* 10 Cir., 107 F. 2d 377, 381; *Atlantic Greyhound Lines of West Virginia* v. *Metz,* 4 Cir., 70 F. 2d 166, 168. See also Restatement of Contracts, Sec. 504, Illustration #4.

Nor is there any merit in the defendant's argument that the plaintiff's reply is deficient because it does not contain an allegation that the parties were mistaken as to an existing or past fact, but only that they were mistaken as to the future consequences of the injury sustained by the plaintiff. The allegation in the plaintiff's reply that both parties believed

"That the plaintiff had not suffered any serious personal injury and that the plaintiff had completely recovered from the effects of his fall from the defendant's train"

is an allegation of a mistake of a present fact. Certainly

Dr. Fuller's statement to the plaintiff that he would be "all right" and his statement that the plaintiff was physically able to return to work can be reasonably understood as declarations of what was then believed to be the plaintiff's physical condition. The court in *Scheer* v. *Rockne Motors Corp.*, 2 Cir., 68 F. 2d 942, 945, (quoted from and relied upon in *Union Pacific Railroad Co.* v. *Zimmer,* supra) amply answered the argument now urged when it said:

> "There is indeed no absolute line to be drawn between mistakes as to future, and as to present facts. To tell a layman who has been injured that he will be about again in a short time is to do more than prophesy about his recovery. No doubt it is a forecast, but it is ordinarily more than a forecast; it is an assurance as to his present condition, and so understood."

It is further contended by the defendant that a plaintiff seeking to avoid the release of a cause of action arising under a federal statute must tender back to the defendant the consideration paid to him for executing the release. It is admitted that in the instant case the $135 received by the plaintiff was not tendered back to the defendant, but the jury was instructed to substract that amount from any damages which they might award the plaintiff. However, the defendant did not object to the lack of tender in its pleadings or at any time in the trial court but raises that objection for the first time upon this appeal. In view of this fact it is not necessary to determine whether the plaintiff should have made a tender of $135. The failure to raise the lack of tender in the trial court constitutes a waiver of that defense. *Robertson* v. *Fuller Const. Co.,* 115 Mo. App. 456, 92 S. W. 130, and *Mandeville* v. *Jacobson,* 122 Conn. 429, 189 A. 596, 598. In the latter case the court stated:

> "It is unnecessary to determine in the instant case whether an allegation of tender was required and the effect of the absence of such an allegation. As we have pointed out, the pleadings did not raise any such question and as far as appears no such point was raised at the trial and there were no requests to charge made of the court. 'If a reply of fraud is made to a plea of release, and no objection is at any time, by pleading or otherwise, made to the sufficiency of the plaintiff's case for failure to tender or return

the fruits of such release, and the defendant insists on its validity as a defense, he thereby waives the necessity for a tender especially when the fruits of a release are restored to him by the judgment and there is no prejudicial error in the omission to allege or prove an offer to return those benefits, even if such offer were otherwise necessary to avoid the release.' 23 R.C.L. 415, *Girard* v. *St. Louis Car Wheel Co.*, 123 Mo. 358, 27 S.W. 648, 25 L.R.A. 514, 517, 45 Am. St. Rep. 556. The charge as given was adapted to the issues raised by the pleadings and sufficient for the guidance of the jury, and the trial court was not bound to instruct the jury as to a possible defense which was not raised by the pleadings or otherwise claimed at the trial."

The next assignment of error made by the defendant is that the trial court erred in refusing to instruct the jury that in order to avoid the release the plaintiff must prove mutual mistake of fact by clear, unequivocal and convincing evidence. The defendant requested that an instruction to that effect be given, but the court refused to do so and instead instructed the jury that it could set aside the release if it found a mutual mistake by a preponderance of the evidence. We are unable to review this assignment of error because the defendant did not take an exception to the instruction given to the jury. *Hadra* v. *Utah Nat. Bank,* 9 Utah 412, 35 P. 508; *Morgan* v. *Child, Cole & Co.,* 61 Utah 448, 213 P. 177. Before leaving this matter, however, we think, the following observation in regard to the nature and proof of a mutual mistake of fact may prove helpful in cases involving the setting aside of releases which may hereafter arise.

There are two prongs to a mistake of fact: (1) the *supposed* true fact—if we may for the purpose of contrast indulge in a tautology, and (2) the actual or true or real fact. The mistake is discovered by comparing that which the parties mutually believed to be the fact with what really was the fact at the time the contract was made. In short, by comparing what was believed to be the fact alongside of the discovered actual fact. In the great majority of cases when the actual fact is discovered there can be no doubt about its truth such as the case where

a contract was made in respect to an individual supposed by both parties to be alive at the time the contract was made who, it is later proved beyond doubt, was then dead. The issue usually involves not the question of what is the true fact, but whether *both* parties believed it to be other wise at the time the contract was made. In short, on the question of mutuality of mistake.

Since mutual mistake of fact consists of a belief by both parties that a certain fact exists whereas in reality it does not exist or is not true, both the belief of the parties in the supposed true fact and existence of the true fact must be proved by the same degree of proof. █ The mistake is a unit circumstance. One of its prongs cannot be proved by a mere preponderance of evidence and other by clear, unequivocal and convincing evidence. Hence in a jurisdiction requiring mutual mistake of fact to be proved by clear, unequivocal and convincing evidence, (which the author of this opinion thinks is required in this jurisdiction) if there is no doubt that both parties contracted in the light of a belief that a certain situation or condition was true and it is claimed by one party that their belief was in fact a mistaken belief, the latter must prove by clear, unequivocal and convincing evidence that the situation or condition in reliance on which the contract was made, was at the time of making thereof different from that which both parties supposed or believed. And if a jury is to determine whether the true fact is in reality different from what the parties mutually believed, such jury must find that fact by clear, unequivocal and convincing evidence, and should be so instructed.

Applying the above to the instant case, there can be no doubt that both parties believed at the time the release was executed, that the plaintiff had suffered only temporary and inconsequential injuries from which he had

completely, or nearly completely recovered. The evidence is uncontroverted in that regard. Both the plaintiff and Sayger testified that they did not know that the plaintiff had suffered a disabling back injury. Sayger knew the plaintiff was settling preparatory to going back to work. The real issue is over the question whether this mutual belief was in truth the fact or whether the plaintiff, as he claims, was at the time the release was executed, suffering from a condition not contemplated by the parties, to-wit, a muscle spasm as the effect of the injury. Plaintiff claims he was so suffering; defendant denies that he was and asserts that his condition at the time of the trial was the same as it was at the time of the execution of the contract and what both parties at that time thought it was. Thus if we were to require mutual mistake of fact to be proved by clear, unequivocal and convincing evidence in the instant case, it would be necessary to prove by that degree of proof: (1) that it was the mutual belief of the parties at the time of the execution of the release that the plaintiff's injuries and effects therefrom were inconsequential, and (2) that said belief of the parties was a mistaken belief because, unknown to either party, the plaintiff had actually suffered a substantial injury.

Turning now to the next assignment of error raised by the defendant, the court instructed the jury in its instruction number ten that:

"Plaintiff is entitled to recover full compensation for all damages proximately resulting from the defective grab-iron, if any, *even though his injuries may have been aggravated by reason of his pre-existing physical condition,* or rendered more difficult to cure by reason of his state of health or even though by reason of a latent disease the injuries were rendered more serious to him than they would have been had he been in the best of health.

"In this connection you are instructed that if you find that the plaintiff is entitled under these instructions to recover damages, then plaintiff is entitled to full compensation for all damages proximately resulting from said defective grab-iron, if any, even though his injuries are more serious and of a longer duration than they would have otherwise been because

of any arthritic condition from which plaintiff may have been suffering." (Italics added.)

The defendant contends that there was no evidence that any injury which the plaintiff may have sustained was or could have been aggravated, rendered more difficult to cure, made more serious, or prolonged because of an arthritic condition from which the plaintiff may have been suffering but that on the contrary, the plaintiff alleged in his complaint and produced expert medical testimony to the effect that the injury he sustained in falling from the defendant's train may have aggravated a latent osteoarthritic condition in his back. Dr. Leslie B. White who examined the plaintiff the evening before the trial testified that the plaintiff

"may have had an arthritic process that was aggravated by his injury"

and that

"if a person with arthritis was injured, he would probably be a little slower in getting better; it might aggravate the arthritic thing so it would develop to a greater degree than it would otherwise."

While technically the instruction was erroneous in that it allowed the jury to find that the arthritis aggravated the injury instead of that the injury aggravated the arthritis, we doubt that the jury was misled.

There was no error in instructing the jury that the plaintiff was entitled to recover for all pain and suffering that he "will probably endure" in the future. The defendant's contention that the jury should have been instructed that the plaintiff was entitled to recover damages for only such future pain and suffering as the evidence establishes with "reasonable certainty" was rejected by this court in *Picino* v. *Utah Apex Mining Co. et al.*, 52 Utah 338, 173 P. 900, 902. There this court approved an instruction allowing the jury in assessing damages to consider the physical and mental pain and

suffering which the plaintiff "will probably hereafter endure."

The final assignments of error made by the defendant are that the trial court erred in permitting the plaintiff to testify as to the treatment prescribed for his back by one Dr. A. E. Hines, who the plaintiff testified was a doctor in Denver, Colorado, employed by the de- fendant, and as to statement made to him by Mr. Merrill, the trainmaster's clerk in Salida, because they were hearsay statements, and also in allowing the plaintiff to testify as to why he was released from employment in Salida because it was a conclusion drawn by him. Assuming without deciding that the court erred in the particulars charged, we are unable to see how the defendant could have been prejudiced thereby.

The judgment below is affirmed. Costs awarded to the plaintiff.

WADE, LATIMER and McDONOUGH, JJ., concur.

PRATT, Chief Justice (dissenting).

I believe that we should not overlook the terms of this release in considering the question of whether or not it was entered into under a mutual mistake of fact. As there is no claim in this case of a signing of the release as the result of fraud or any unfair advantage taken of plaintiff by the defendant or any of its agents, we are presented with a written instrument that has in it certain statements indicative of a realization that the physical condition of the plaintiff was not free from doubt—an instrument containing these two statements:

"I have read the foregoing release and fully understand the same."
"* * * and fully understand that I can make no further claim against said Railroad Company even though said injuries are more serious or different than I now know or understand them to be."

The first statement, of course, is important only as ex-

pressive of plaintiff's familiarity with what he was doing. The second statement is the important one.

Let it be conceded that, even though a plaintiff waives all claims he may have arising out of an injury, and does so believing that he will never have any other claims than the one settled, he will not be held to his release if it develops that he and the other contracting party were acting upon the erroneous belief as to the serious nature of his injury. This, of course, is founded upon the idea that the minds of the parties have not met, in arriving at their contractual purpose, because they acted upon a condition of fact that was not true.

But what if they recognize that their then understanding of the fact may be doubtful or may be erroneous? Certainly they may, if they desire, contract to cover such a contingency. If they, in effect say to each other: If however we are mistaken as to the seriousness of this injury, it is to be understood that this consideration will settle the dispute anyway, their minds have met. The factual foundation for that meeting of minds in the alternative—either that the injury is not serious, in fact; or that if serious, it is covered by the release anyway. Are these alternatives, then, not the implication of the second quotation above? Under such circumstances proof of the actual serious character of the injury is not proof of a mistake of fact and thus proof of an erroneous foundation of contractual relationship. It would merely shift the support in the foundation from one contingency to the other, both of which were within the contemplation of the parties at the time they entered into the contract. From the standpoint of material mistake of fact, there would be a failure of proof.

I realize, of course, that many times the layman signs papers without watching too closely what is included as terms; but, after all, the principle of mutual mistake of

fact is not intended as a panacea for improvident, careless nor indifferent action. One may just as strongly evidence his intentions by what he accepts in the writings he signs, as he may by other acts. In fact, intentions evidenced by writings are not subject to the "uncertainty of slippery memory."